THE TRENTON POTTERIES COMPANY, Appellant, *v.* TITLE GUARANTEE AND TRUST COMPANY, Respondent.

1. TITLE INSURANCE — WHAT IS INSURED BY POLICY OF.  A policy of title insurance undertaking to insure the holder thereof against all loss and damage, not exceeding a specified sum, which the insured shall sustain by reason of any defect or defects of title, affecting the title of the property insured thereby and the interest of the insured therein, or by reason of unmarketability of the title of the insured to or in the premises, or by reason of liens or incumbrances charging the same at the date of the policy, is a contract designed to save the insured harmless from any loss through defects, liens or incumbrances that may affect or burden his title

when he takes it, and from the very nature of the contract it usually bears the same date as the deed of the title which it purports to insure, and if, in any case, there is a discrepancy between such dates it must be due to some exceptional circumstance which should be noted in the contract.

2. REFORMATION OF POLICY — WHEN INSURER NOT LIABLE FOR ASSESSMENT LEVIED ON PROPERTY AFTER CONVEYANCE TO INSURED, BUT BEFORE DATE OF ISSUANCE OF POLICY. Where a policy of title insurance covering five separate pieces of property was not issued at the time the deeds of four of the parcels were delivered and accepted, but its issuance was postponed until after the title to the fifth parcel was perfected, evidence of the facts and circumstances under which the contract of insurance was made showing that there was no purpose on the part of either of the parties to have any of the titles insured beyond the moment when they became the property of the insured; that the issuance of a single policy after all the titles were perfected was agreed upon as a matter of convenience with no thought of changing the liability of the insurer from what it would have been if a policy upon the first four titles had been issued when the conveyances thereof were made, and that there was no mistake as to the actual terms of the agreement expressed in the policy, but that in reducing it to writing the real date as to a part thereof was inadvertently omitted, will justify the trial court in reforming the policy so as to make it conform to the actual agreement of the parties; and the insured cannot maintain an action to compel the insurer to reimburse the insured for the amount paid upon an assessment for a street opening, which became a lien upon one of the four parcels three months after the insured had taken title thereto and seven months before the policy was issued.

3. EVIDENCE — TESTIMONY OF EXPERTS NOT COMPETENT TO SUPPORT CONCLUSION THAT THE POLICY SHOULD HAVE BEEN DIFFERENT IN FORM. Testimony of experts in title insurance as to what they would have done, or what ought to have been done, in the issuance of the policy in question, and as to the custom of title insurance companies in such cases, is not admissible to support the legal conclusion that the policy should have been different in form.

*Trenton Potteries Co.* v. *Title Guarantee & Trust Co.*, 68 App. Div. 636, affirmed.

(Argued May 15, 1903; decided October 6, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 13, 1902, affirming a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Howard R. Bayne* for appellant.    The learned trial judge erred in overruling plaintiff's objections to answers that violate the rule of evidence which requires a witness to state facts or conversations and not give conclusions or opinions upon the question which the jury is to determine. (*Turner* v. *City of Newburg,* 109 N. Y. 301 ; *Wanamaker* v. *Megraw,* 168 N. Y. 132 ; *Ives* v. *Ellis,* 169 N. Y. 85 ; *Bank of State of N. Y.* v. *S. Nat. Bank,* 170 N. Y. 1 ; *Jefferson* v. *N. Y. El. R. R. Co.,* 132 N. Y. 483 ; *Foote* v. *Beecher,* 78 N. Y. 155 ; *Hall* v. *U. S. Radiator Co.,* 76 App. Div. 504.)    There is no evidence that a mutual mistake between plaintiff and defendant was made. (*Allison Bros. Co.* v. *Allison,* 144 N. Y. 31 ; *Nevins* v. *Dunlap,* 33 N. Y. 680 ; *Curtis* v. *Albee,* 167 N. Y. 364.)

*George Coggill* and *John L. Cadwalader* for respondent. Upon the facts as now shown by the evidence the court might, without the necessity of reforming the policy, construe it in the light of the circumstances surrounding the contract for its issuance and occasioning delay in its delivery, as limiting the defendant's liability for liens to those only which arose upon the several properties prior to the time they were respectively conveyed. (*Draper* v. *Snow,* 20 N. Y. 331 ; *Kincaid* v. *Archibald,* 73 N. Y. 189 ; *Barlow* v. *S. N. Nat. Bank,* 63 N. Y. 399, 402 ; *S. T. S. B. Co.* v. *Jenks,* 19 App. Div. 314.)    The rulings of the trial court upon the admissibility of evidence were correct. (*De St. Laurent* v. *Slater,* 23 App. Div. 70 ; *Carroll* v. *N. Y. El. R. R. Co.,* 14 App. Div. 278 ; 162 N. Y. 603 ; *Smith* v. *Wetmore,* 24 Misc. Rep. 225.)

WERNER, J.    This action is brought to recover upon a policy of title insurance, the amount of an assessment which became a lien upon the property of the plaintiff, after it had taken title thereto and gone into possession thereof, but before the date of the policy.    It appears that the plaintiff, a New Jersey corporation, was formed for the purpose of taking over the property and business of five pottery plants in Tren-

ton, New Jersey, known as the Empire, Crescent, Equitable, Delaware and Enterprise, and it employed the defendant to search the titles and to insure them. Early in July, 1892, the titles to four of these plants were ready for transfer, but the title to the "Empire" plant was incumbered by certain infants' interests that could not be conveyed without judicial sanction in proceedings instituted for that purpose. This complication led to an interview between a representative of the plaintiff and another of the defendant, in which it was decided to have a single policy to cover all of the properties, and to defer the issuance thereof until the "Empire" title could be perfected. At this interview the deeds conveying to the plaintiff the Crescent, Equitable, Delaware and Enterprise potteries were delivered to defendant's representative and by him recorded, and thereupon the plaintiff went into possession of these four plants. The defects in the "Empire" title were removed and the conveyance of that property was made on April 19th, 1893, the deed being recorded April 24th, 1893, on which date the policy in suit was issued.

On the 12th of October, 1892, an assessment for a street opening became a lien on the "Crescent" property. This was three months after the plaintiff had taken title thereto, and seven months before the defendant issued its policy. The plaintiff, having paid the assessment, called upon the defendant for reimbursement, which was refused, and this action was brought.

There have been two trials. Upon the first trial it was held that the plaintiff could not recover because it was the owner of the property upon which the assessment was made at the time it became a lien. The judgment entered upon that decision was reversed at the Appellate Division upon the ground that it could not be held as matter of law that a policy dated subsequent to the assessment, and which in terms purported to insure against liens and incumbrances charging the property at the date of the policy, was intended to cover only such liens and incumbrances as existed when the plaintiff took

title.  Upon the second trial the defendant was permitted to introduce oral evidence in support of its allegation, that by inadvertence and mistake the policy was dated April 24th, 1893, when in fact it should have been dated July 1st, 1892, as to the four properties conveyed on the latter date.  The learned trial court held that the allegation of mistake was abundantly supported by the evidence, and the judgment in favor of defendant, entered upon that decision, has been unanimously affirmed by the learned Appellate Division.

The learned counsel for the appellant, realizing the limitations imposed upon him by the unanimous affirmance, takes the position that if the incompetent evidence received over his objections was expunged from the record it would be barren of proof tending to show inadvertence or mistake in the framing of the contract of insurance.  This contention is amply justified so far as it relates to the evidence of so-called experts in title insurance who were permitted to give their opinions as to what they would have done or what ought to have been done in the issuance of such a policy under the conditions above described.  There is so much of that kind of incompetent evidence received under the objections and exceptions of plaintiff's counsel that we cannot attempt to reproduce it here, and we shall only give two or three specimen questions and answers to illustrate how far afield the defense was permitted to go in its attempt to secure a reformation of the contract on the ground of inadvertence and mistake.

One Van Buskirk, a lawyer and a director of the defendant, was asked : " If you had issued a policy of insurance at or about that time on the closing of these titles, upon the four titles which were pronounced to be good, what would have been the date of that policy of insurance ? "  The witness answered : " The date of the recording of the deeds."  Another witness for the defendant named Green, who was manager of a New York title insurance company, was asked : " In a case where several pieces of property were transferred, but on different dates, and the record date of the different deeds bore, of course, different dates, what, under such circum-

stances, does the policy if it bears a single date and is a single policy show in the custom of your business?" The answer of the witness was: "As a matter of form it would bear the date of the face of the last deed, but as to its application it would only have the application of the record dates of the several deeds." And, again, a witness, Bailey, was asked: "In what respect does this policy fail to conform to the usual form of title insurance policy under these circumstances?" His answer was: "It insures against liens, subsequent to the date of the acquiring of the title of a number of the properties set forth in the policy." In these three instances which, as we have said, are merely illustrative of numerous others, defendant's witnesses testified to what they would have done under similar circumstances; to the custom of other title insurance companies in such cases, and to the legal conclusion that the policy should have been different in form.

This unique and summary disposition of the whole case would excite no less surprise than criticism were it not for the embarrassments by which the learned trial court and the counsel for the defendant were surrounded. A former trial court had held, in substance, that the mistake in the policy was obvious on its face, or that it should at least be so construed as to cover no liens or incumbrances accruing after the several titles had vested in the plaintiff. The appellate court had disagreed with this view and ordered a new trial on the ground that the policy as written covered the assessment, which became a lien upon the "Crescent" property prior to the date of the policy, although after defendant took title thereto, and that the policy would have to be reformed before the defendant could be relieved from liability. These embarrassments were accentuated by the fact that this was not the usual case of mistake caused by a misunderstanding of terms expressed in conversation and inaccurately or erroneously transcribed into the written instrument; on the contrary, the mistake was the result of inadvertence in the failure of the parties to notice that the date of the policy, unquali-

fied and unexplained, had the effect of creating a contract that was not intended to be made by either party. As the Appellate Division had laid down no rule of procedure for the second trial it was obvious there was but scant room for competent oral evidence, unless the opinions of experts in title insurance could be received, and this probably accounts for the freedom with which incompetent testimony was offered and admitted when once the forbidden field had been entered.

We hold that the opinions of the experts were not competent, and when that testimony is expunged from the case it becomes apparent that the unanimous affirmance in the Appellate Division will not support the judgment herein unless the nature and purpose of the contract, coupled with the facts and circumstances surrounding the transaction, are such as to justify or require a reformation of the policy. In determining that question it becomes necessary to scrutinize somewhat more closely the contract as written, its nature and purpose, the conditions under which it was made, and the legitimate oral evidence, if any, bearing upon the transaction.

*First.* As to the written contract. In the body of the policy the defendant undertakes to insure the plaintiff "against all loss or damage, not exceeding Four hundred thousand dollars, which the insured shall sustain by reason of any defect or defects of title affecting the premises described in schedule 'A' hereto annexed, affecting the interest of the insured therein as described in said schedule, or by reason of unmarketability of the title of the insured to or in said premises, or by reason of liens or incumbrances charging the same at the date of this policy." The policy is dated April 24th, 1893. The premises described in schedule "A" are the five pottery plants above referred to. The assessment which occasions this suit became a lien in October, 1892; or seven months prior to the date of the policy. Upon these facts, considered alone, there could hardly be any controversy as to the meaning of the contract. But schedule "A" enumerates the several deeds by which the five pottery plants were conveyed to the plaintiff, and shows that four of them, including

the one affected by the assessment, are dated June 16th, 1892, and were recorded July 8th, 1892, which was three months before the assessment became a lien. The plaintiff went into possession of these four plants immediately upon taking title thereto, although the deeds thereof were left with the defendant pending the perfecting of the title to the fifth plant and the issuance of the policy.

*Second.* As to the nature and purpose of the contract. The contract is one of insurance against defects in title, unmarketability, liens and incumbrances. The risks of title insurance end where the risks of other kinds begin. Title insurance, instead of protecting the insured against matters that may arise during a stated period after the issuance of the policy, is designed to save him harmless from any loss through defects, liens or incumbrances that may affect or burden his title when he takes it. It must follow, as a general rule, therefore, that when the insured gets a good title, the covenant of the insurer has been fulfilled and there is no liability. It is also apparent from the very nature of the contract that it usually bears the same date as the deed of the title which it purports to insure, and that if, in a given case, there is a discrepancy between these dates, it must be due to some exceptional circumstance which should be noted in the contract. In the contract before us the absence of any special note as to the date negatives any intention to take this case out of the general rule.

*Third.* As to the facts and circumstances under which the contract was made. The plaintiff, as a part of its plan of organization, was to take over the title to the five potteries above named. Four of these titles were perfected July 8th, 1892. Had the fifth title been ready at the same time, the policy of insurance upon the five titles would, of course, have been issued at that time. The fifth title being imperfect, the question arose whether the defendant should then issue separate policies upon each of the four perfected titles and issue a fifth one when the outstanding title was made good; or whether the plaintiff desired to cover the four perfected titles with one policy then to be issued, and the other title,

when perfected, with a second policy; or whether a single policy covering all the titles would be issued when all were perfected. It was finally decided to pursue the latter course, and the testimony of Halsey, the defendant's representative, as to the conversation between him and Mr. Ledyard, of counsel for the plaintiff, clearly shows how it came about. He says: "After the titles to the four pieces of property were closed, Mr. Ledyard asked me for our policy of title insurance. I explained to him that it was impossible for us to prepare the policy insuring the titles of this kind before the matter was closed, and I offered to deliver the policy to him by the next day if he wished it. He then suggested that we could not guarantee the title of the fifth piece anyway, and I asked him whether he would prefer to wait for his policy until the Trenton Potteries Company had taken title to the fifth piece and then to have a single policy covering all their property, or whether he would have a policy for the four pieces at once, and a separate policy for the fifth piece when his company had taken title. He asked me whether I thought that the Title Company would be responsible anyway if the title were bad and laughed when I said I thought they would be. He then consulted with the officers of the company who, with several members of the new company and former owners of the property mentioned above, were in one of his offices, I being present, and it was decided that the more convenient way would be to take a single policy when they acquired title to the fifth piece and not to take any policy at that time for the four pieces."

In the foregoing combination of elements, which may properly be considered in determining what the contract between the parties was intended to be, we have, as it seems to us, the clearest indication that there was no purpose on the part of either party to have any of the titles insured beyond the moment when they became the property of the plaintiff. This is attested by the nature and purpose of the contract, the absence of any special condition therein taking the case out of the ordinary rule, and by the conversations between

Halsey and Ledyard, from which it appears that the issuance of a single policy, after all the titles were perfected, was agreed upon as a matter of convenience and with no thought or suggestion of changing the liability of the defendant from what it would have been if a policy upon the four titles had been issued when the conveyances thereof were made. The whole transaction tends to show that there was no mistake as to the actual terms of the agreement, but that in reducing it to writing the real date as to a part thereof was inadvertently omitted. That is the sum and substance of the whole matter. Upon these competent facts and circumstances alone the trial court should have reformed the written policy so as to make it conform to the actual agreement of the parties, and in this view of the case the excision of the incompetent evidence referred to does not affect the result. This conclusion seems to be supported by either one of the following two views that may be taken of the transaction : If there was no mistake in the agreement as made and understood between the parties, and the scrivener in reducing it to writing inadvertently omitted an essential element thereof, the court had the right to reform the written contract, under the case of *Born* v. *Schrenkeisen* (110 N. Y. 55); if, on the other hand, this is regarded as an instance of actual mistake in the making of the contract, then the mistake was mutual and the reformatory power of the court is properly invoked on that ground. The evidence of Halsey as to the conversation between him and Ledyard when the first four titles were passed, was competent as bearing upon the date which the subsequently issued policy should have borne in relation to those titles. Oral evidence of mistake in the date of a written instrument is always admissible. (*Kincaid* v. *Archibald*, 73 N. Y. 193.)

Counsel for the plaintiff and appellant in the course of his very able argument, suggested that defendant had been negligent in searching these titles, and for that reason it should not be permitted to escape its liability as an insurer. Whatever the fact may be in regard to defendant's alleged negligence, it is enough to say that this action is not based upon that

ground. The contract of insurance is distinct and separate from the contract of searching. This action is brought upon the contract of insurance. Under the contract for searching titles the defendant may be liable for any damages which its negligence may have imposed upon the plaintiff. (*Ehmer* v. *Title Guarantee & Trust Co.*, 156 N. Y. 10.) Under the contract of insurance no question of negligence in searching can arise.

For these reasons the judgment herein should be affirmed, but in view of the apparent justification of this appeal by reason of the incompetent evidence received at the instance of the respondent, the affirmance should be without costs.

O'BRIEN, BARTLETT, HAIGHT, VANN and CULLEN, JJ., concur; MARTIN, J., not voting.

Judgment affirmed.