(No. 20430.—

THE PEOPLE *ex rel.* Leo H. Lowe, Director of Trade and Commerce, Appellee, *vs.* THE NEW YORK TITLE AND MORTGAGE COMPANY, Appellant.

*Opinion filed October 23, 1931—Rehearing denied Dec. 2, 1931.*

ALLEN & CONVERSE, and McKINNEY, LYNDE & GREAR, (JOHN M. ZANE, L. A. STEBBINS, GEORGE S. PARSONS, and GEORGE H. GREAR, of counsel,) for appellant.

OSCAR E. CARLSTROM, Attorney General, (B. L. CATRON, and WEYMOUTH KIRKLAND, of counsel,) for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

The People of the State of Illinois, upon the relation of appellee, Leo H. Lowe, Director of Trade and Commerce, filed an information in the nature of *quo warranto* against appellant, the New York Title and Mortgage Company, a corporation, to require it to show by what authority it was doing business in Illinois. Appellant filed two special pleas, to which appellee demurred generally and specially. The demurrer was sustained to both pleas. Appellant elected to stand by its pleas, a judgment of ouster was entered against it, and it has appealed to this court.

The pleadings show that prior to July 1, 1929, appellant was incorporated under the laws of New York to guarantee titles and mortgages. On that date it had a paid-up capital stock of $20,000,000, and it maintained such reserves as were required and approved by the State of New York and by all other States in which it was doing business. Its total assets exceeded $67,000,000. It had a surplus of $30,000,000 and undivided profits in excess of $13,000,000. It was licensed to do business in twenty-two States other than Illinois. On June 21, 1929, it filed with the Department of Trade and Commerce of Illinois its written application for a license to transact the following kinds of insurance business: "Miscellaneous—To examine titles to real property and chattels real, to procure and furnish information in relation thereto, make and guarantee the

correctness of searches for all instruments, liens or charges affecting the same, and to guarantee and insure the owners of real property and chattels real, and others interested therein, against loss by reason of defective titles thereto and encumbrances thereon." The application was executed by the vice-president and assistant secretary of appellant upon a form furnished by the superintendent of insurance of Illinois. There was filed with the application a certificate showing deposit of the securities required of insurance companies under the laws of Illinois, a certified copy of appellant's charter, amendments and by-laws, a certificate of the superintendent of insurance of New York that appellant was duly organized and licensed to transact title and mortgage guaranty business in New York, an appointment of the superintendent of insurance of Illinois as attorney in fact to accept service of process in Illinois, a complete statement of appellant's financial condition, and a certified copy of a report of its examination by an examiner of the insurance department of New York. On July 24, 1929, a license was issued by Leo H. Lowe, the Director of Trade and Commerce, and attested by the superintendent of insurance, authorizing appellant to transact the business of title and mortgage guaranty insurance in accordance with the laws of Illinois. Appellant paid the fees and charges relative to securing this license, filed its annual report for 1930 and paid a tax based on said report, and at the time of filing its pleas in this proceeding it had issued in excess of 900 title insurance policies upon property in this State, in excess of $14,000,000.

Appellant alleged in its first plea that it originally made application to the Auditor of Public Accounts to be admitted to do business in Illinois under the Title Guaranty act of 1901, (Cahill's Stat. 1929, chap. 32, p. 721,) and that the Auditor of Public Accounts referred the matter to the Attorney General for an opinion, and that the Attorney General in a written opinion held that the Title

Guaranty act of 1901 did not provide for or authorize the licensing of foreign corporations to do a title guaranty or insurance business in this State. The plea alleges that appellant afterwards, with the advice and consent of the superintendent of insurance and the Attorney General, filed with the superintendent of insurance its written application for a license to transact the title and mortgage guaranty business in Illinois, and with its application submitted the documents hereinbefore enumerated; that prior to the issuance of a license to appellant the Director of Trade and Commerce applied to the Attorney General for an opinion as to the right of appellant to engage in such business and referred said papers and documents to the Attorney General for his consideration, and that thereafter the Attorney General gave his written opinion to the superintendent of insurance to the effect that appellant might be licensed to do business in Illinois pursuant to the provisions of the Casualty Insurance act of 1899. (Cahill's Stat. 1929, chap. 73, p. 1570.) The plea further alleges that the charter herein complained of was issued by the Director of Trade and Commerce upon said opinion; that subsequently a competitor of appellant requested the Attorney General to file a *quo warranto* action against appellant for the purpose of procuring a judgment of ouster against it; that the competitor filed in the office of the Attorney General its brief of points, authorities and argument which it claimed showed that appellant was not entitled to do business in Illinois; that thereafter the Attorney General re-examined the questions of law with respect to the right of appellant to a license to carry on its business in Illinois as a foreign corporation and adhered to his former opinion and re-affirmed the same in a written memorandum.

The opinion of the Attorney General stating that appellant might qualify under the Casualty Insurance act of 1899, and the memorandum issued by him upon applica-

tion of the competitor, are set forth verbatim in appellant's first plea. The propriety of the opinion and memorandum as part of the plea is challenged by appellee in his special demurrer. In the view we take of this case it will be unnecessary to determine whether this matter was properly a part of the plea or whether it was mere surplusage.

The second plea sought to justify the granting of the license on the doctrine of comity between States. Where there is no positive prohibitive statute on the subject, the presumption under the law of comity that prevails between the States is, that a State permits a corporation organized under the laws of a sister State to do any act authorized by its charter or the law under which it is created except when it is manifest that such act is obnoxious to the policy of the law of the State where it seeks to do business. (*People* v. *Lowe,* 340 Ill. 51; *People* v. *Fidelity and Casualty Co.* 153 id. 25.) Mere absence of legislation authorizing the formation of a particular class or kind of corporations does not show that it is against public policy to create such corporations but such public policy must be expressed in some affirmative way. *Stevens* v. *Pratt,* 101 Ill. 206; *Cowell* v. *Colorado Springs Co.* 100 U. S. 55.

It is urged by appellee that section 84 of the general Corporation act is a positive prohibitive statute destroying the rule of comity in the present case. The first paragraph of section 84 provides that no foreign corporation shall engage or continue in any kind of business in this State the transaction of which by domestic corporations is not permitted by the laws of this State. This section is not in terms limited to corporations of the type designated in sections 1 and 80 of the general Corporation act but includes every type of corporation authorized by law. The second sentence of section 84 by its terms applies to "a foreign corporation admitted to do business hereunder." In *Stevens* v. *Pratt, supra,* a section of the Corporation law of 1872

regulating foreign corporations, and the officers and agents thereof, doing business in this State, was held to have reference only to the classes of corporations anticipated to be created under its provisions, but the opinion stated that if the legislature had made its enactments in unmistakable terms to the contrary they would have been followed. No construction has heretofore been placed upon that part of section 84 above set forth as to whether it includes corporations of types other than those provided for by the general Corporation act, and constructions placed on other sections of the act are not authority on this point. (*Venner* v. *Chicago City Railway Co.* 246 Ill. 170.) The Title Guaranty act of 1901 (ibid. p. 721,) authorizes incorporation of domestic corporations under the general Corporation act for the purpose of guaranteeing or insuring titles to real estate. No power has been given to appellant by its license from the Department of Trade and Commerce which would be refused a domestic corporation under the Title Guaranty act.

The next question is whether the transaction by appellant of the title and mortgage guaranty business in Illinois is against public policy. Appellee contends that the Title Guaranty act, which authorizes the incorporation under the general Corporation act of title guaranty companies, evidences a public policy on the part of the State not to permit the title guaranty business to be transacted in the State without regulation or license. Appellant did not endeavor to transact business in this State without regulation or license. It is an insurance company, and the business of guaranteeing real estate titles and mortgages is an insurance business. (Cooley's Briefs on Insurance—2d ed. 1928—pp. 21, 22; *Foehrenbach* v. *German-American Title and Trust Co.* 217 Pa. 331, 66 Atl. 561; *Hager* v. *Kentucky Title Co.* 119 Ky. 850, 85 S. W. 183.) Appellant was therefore governed by the statute requiring foreign insurance companies, before transacting insurance business

in the State other than life insurance, to comply with the requirements of the general insurance laws governing fire, marine and inland navigation companies doing business in the State. (Cahill's Stat. 1929, chap. 73, par. 70, p. 1502.) According to the allegations of the pleas, appellant complied with the provisions of the Fire, Marine and Inland Navigation act, (Cahill's Stat. 1929, chap. 73, p. 1513,) which was a sufficient compliance with the laws of Illinois unless some other statute adds other requirements. (*People v. Fidelity and Casualty Co. supra.*) It is unnecessary to determine whether title and mortgage guaranty insurance comes under the provisions of the Casualty Insurance act, (Cahill's Stat. 1929, chap. 73, p. 1570,) for the reason that appellant, under its pleas, has qualified under that act as well as under the Fire, Marine and Inland Navigation act. The Title Guaranty act (Cahill's Stat. 1929, chap. 32, p. 721,) is limited in its regulations to domestic corporations. No other act has any application to appellant.

Appellee contends that under section 29 of the Fire, Marine and Inland Navigation act (ibid. par. 158, p. 1521,) appellant should be excluded from Illinois unless it appears that an Illinois corporation would be authorized to transact the same business under the laws of New York. It will not be necessary to determine whether appellee's interpretation of section 29 is correct, for the reason that the laws of New York permit an Illinois corporation to transact title and mortgage guaranty insurance business in New York. 27 McKinney's Consolidated Laws of New York, (1929 supp.) sec. 173, p. 136; Cahill's Ill. Stat. 1929, chap. 73, sec. 17, p. 1495; Cahill's N. Y. Consol. Laws 1930, sec. 25, p. 1162.

It is urged that as appellant's application was made under the Casualty Insurance act the license should not be issued unless title guaranty insurance clearly comes within the purview of that act. So long as the proper statute has actually been complied with, the intent in making the ap-

plication is immaterial. *Davis* v. *Brace,* 82 Ill. 542; *Klutts* v. *Jones,* 148 Pac. 494.

Appellee contends that under the laws of New York appellant was required to set apart two-thirds of its capital for a guaranty fund for the payment of its insurance losses, therefore its capital stock, so far as general creditors are concerned, was impaired by two-thirds, and thus appellant is unable to comply with section 22 of the Fire, Marine and Inland Navigation act, (ibid. par. 150, p. 1517,) which provides that while such deficiency shall continue no agent shall be allowed to transact business for any foreign insurance company licensed thereunder whose capital is impaired to the extent of twenty per cent thereof. The obvious purpose of this section is to protect policyholders, and the guaranty fund creates no impairment of its capital.

Appellee insists that appellant failed to allege in its first plea an exact compliance with certain requirements of the Fire, Marine and Inland Navigation act. According to appellant's plea it appointed the superintendent of insurance of the State of Illinois and his successors in office as attorney for the service of process. The statute provides for the appointment, in the alternative, of the Director of Trade and Commerce and his successors, or any official who shall hereafter be charged with the supervision of the business of insurance in Illinois. (Cahill's Stat. 1929, chap. 73, par. 150, p. 1517.) Appellant complied with this provision of the statute, because the superintendent of insurance is now, and was at the time the license was issued, the supervisor of insurance in this State. (Cahill's Stat. 1929, chap. 73, secs. 1-3, p. 1493.) The statute provides that the secretary of the corporation shall be one of the officers to execute the application for a license. According to the plea the application was executed by the assistant secretary on behalf of the secretary. The principle of agency involved is elementary and needs no further discussion.

Appellee objects that the pleas do not set forth that any statement was filed giving the name of the company and the place where it was located, as required by statute. The application, which was made a part of the first plea, sets forth this fact specifically.

Appellee asserts that the pleas did not show that a copy of the last annual report made under the laws of New York was filed, as required by statute. That this annual report was filed as part of the original application is apparent from the pleas when considered as a whole.

Appellee asserts that the pleas did not show that appellant filed a detailed statement of its assets. The pleas alleged that there was filed a "complete statement of the financial condition of the respondent corporation," appellant. This was not a mere conclusion but sufficiently· set forth appellant's compliance with the statute.

The pleas do not allege that the financial statement was verified, as required by law, but it does appear that the allegation as to the financial condition of appellant was sufficiently complete to meet the requirements of the Department of Trade and Commerce and to satisfy the Attorney General as to the sufficiency of the application. No advantage was taken of this alleged lack of conformity by appellee's special demurrer.

A foreign corporation will not be allowed to do business in this State on more favorable conditions than those prescribed by law for domestic corporations, (Thompson on Corporations—2d ed.—sec. 6628; *Monarch Discount Co.* v. *Chesapeake and Ohio Railway Co.* 285 Ill. 233,) but the restrictions placed upon appellant by the applicable statutes of Illinois are at least equally great as restrictions placed on local title guaranty companies organized under the Title Guaranty and general Corporation acts. The appellant is not authorized to transact the business of title guaranty insurance by virtue of the doctrine of comity between the

States, and the second plea did not state a defense to the information.

The judgment is reversed and the cause remanded to the circuit court, with directions to overrule the demurrer to the first plea and sustain it to the second plea.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*