R. L. DANIEL ET AL. V. TYRRELL & GARTH INVESTMENT COMPANY.

No. 6903. Decided April 8, 1936.
(93 S. W., 2d Series, 372.)

*William McGraw,* Attorney General, and *Vernon Coe,* Assistant Attorney General, for plaintiffs in error Board of Insurance Commissioners.

Article 1302A, relating to title insurance, is not retroactive when made to apply to guaranties of title issued by the American Title Guaranty Company on certain pieces of property sold by plaintiffs and titles issued after the effective date of the said law. Mellinger v. City of Houston, 68 Texas, 37, 3 S. W., 249; 9 Texas Jur., page 537; Treigle v. Acme Homestead Assn., 181 La., 941, 160 So., 637, 56 Sup. Ct., 408, 101 A. L. R., 1284; Virginia v. Shenandoah River L. & P. Co., 135 Va., 47, 115 S. E., 695.

Where a business such as title insurance is affected with a public interest, any private contract made with reference there-

to is deemed to be made with the knowledge that the sovereign power may pass legislation abrogating such contracts, which may be done under the police power, without inhibition by either the State or Federal Constitutions, relating to the impairment of contracts. Munn v. Illinois, 94 U. S., 113, 24 L. Ed., 77; Shaw v. Lone Star B. & L. Assn., 123 Texas, 373, 71 S. W. (2d) 865; Louisiana Ry. Co. v. State (Com. App.), 7 S. W. (2d) 71.

*Vinson, Elkins, Sweeton & Weems, John C. Townes, H. P. Pressler, Jr.,* all of Houston, for defendants in error.

The *Stewarts, Maco Stewart, and W. Noble Carl,* all of Galveston, field brief as amicus curiae.

MR. JUSTICE CRITZ delivered the opinion of the court.

This case was tried in the District Court of Harris County before the court, without the intervention of a jury, on an agreed statement of facts. The following are the facts pertinent to this opinion:

Tyrrell & Garth Investment Company, hereafter designated Tyrrell & Garth, was a joint stock association, engaged in the business of buying and selling real estate. The American Title Guaranty Company, hereafter designated the Title Company, was a corporation duly incorporated under the laws of Texas, with the power and authority to carry on and conduct the business of guaranteeing land titles. On November 15, 1928, Tyrrell & Garth and the Title Company entered into a contract whereby the Title Company agreed to insure the titles to Tyrrell & Garth land for $2.50 per $1000 of sale prices. Under the terms of this contract, the Title Company further agreed to issue certificates of title for $1.00 each. Such contract was to run until all of a certain tract of land owned and subdivided by Tyrrell and Garth was sold.

At the time the above contract was entered into, there was no law in force in this State regulating or controlling the forms of policies to be issued or rates to be charged by title insurance companies doing business in this State.

Subsequent to the time the above contract was entered into between Tyrrell & Garth and the Title Company, the Legislature of this State enacted Chapter 40, Acts Regular Session 41st Legislature, 1929. The above Act is codified as Article 1302a, 1935 Pocket Supplement, Vernon's Annotated Revised Civil Statutes of Texas. The Act in question is a very comprehensive one, "Relating to Abstract and Title Insurance Corporations." It became effective February 27, 1929, as above

stated, after the above contract was entered into. In the case at bar, we are directly concerned with Section 3 of such Act, which reads as follows:

"Sec. 3. Corporations so formed as well as foreign corporations and those created under Subdivisions 57, Article 1302 of the Revised Statutes of 1925, or under Chapter 18, Title 78, Revised Statutes of 1925, or any other law, insofar as the business of either may be a title insurance business, shall operate in Texas under the control and supervision and under such uniform rules and regulations as to forms of policies and underwriting contracts and premiums therefor, as may be from time to time prescribed by the Board of Insurance Commissioners of Texas; and no Texas or foreign corporation whether incorporated under this Act or any other law of the State of Texas shall be permitted to issue any title policy or mortgage certificates or underwriting contract on Texas property other than under this Act and under such rules and regulations. No policy of title insurance of guarantee of any character on Texas titles shall be issued or valid unless written by a corporation complying with all provisions of and authorized or qualified under this Act. Before any rate provided for herein shall be fixed or changed, reasonable notice shall issue, and a haring afforded to the companies affected by this Act. Every company doing business under this Act shall file with the Board of Insurance Commissioners the form of guarantee certificates, mortgage policy or any policy of title insurance before the same shall be issued, and the form must be approved by the Board, and be uniform as to all companies. Under no circumstances may any company use any form until after the same shall have been approved by the Board.

"The Board of Insurance Commissioners shall have the right and it shall be its duty to fix and promulgate the rates to be charged by corporations created or operating hereunder for premiums on policies or certificates and underwriting contracts. The rate fixed by the Board shall be reasonable to the public and nonconfiscatory as to the company. For the purpose of collecting data on which to determine the proper rates to be fixed, the Board shall have the right to require the companies operating in Texas to submit such information in such form as it may deem proper, all information as to loss experience, expense of operation, and other material matter for its consideration.

"Rates when once fixed shall not be charged until after a public hearing shall be had by the Board, after proper notice

sent direct to all companies interested in writing this business, and after public notice in such manner as to give fair publicity thereto for two weeks in advance. The Board must call such hearing to consider rate changes at the request of a company writing title insurance, or if the Board thinks that a change in rates may be proper. Any company or other person interested, feeling injured by any action of the Board with regard to rates, shall have the right to file a suit in the District Court of Travis County, within thirty days after the Board has made such order, to review the action, in which suit the Court may enter a judgment correcting the Board's order and fixing such rates as may be proper, or affirming the action of the Board. Under no circumstances shall any rate of premium be charged for policies or underwriting contracts different from those fixed and promulgated by the Board, or those fixed in a final judgment of the Court as herein provided."

It further appears from the record that after the above Act became effective, the Board of Insurance Commissioners of Texas, hereafter designated as the Board, duly passed and promulgated rules and regulations prescribing the forms of policies to be issued and rates to be charged by title insurance companies, such as this. These rules and regulations became effective on June 1, 1931. Under such rules and regulations it was provided that all companies insuring titles to this State should charge a rate of one-half of one per cent., with a minimum charge of $7.50 per guaranty certificate.

It further appears that under the rules and regulations passed and promulgated by the Board, all title insurance companies were compelled to charge the rates fixed by such Board, and this in spite of the fact that such companies may have had outstanding contracts to issue their policies at other and lesser rates. In this connection, it appears that under the rules and regulations so promulgated by the Board, this Title Company is compelled to charge Tyrrell & Garth the rates fixed by the Board on the policies it issues to them regarding the land included in the above-mentioned contract.

It further appears that the Title Company is willing to carry out its contract with Tyrrell & Garth, but that if it does so, and issues its guaranty policies at the rates provided therein, the Board will revoke its certificate of authority to do business in this State. On this account, and on this account only, the Title Company has refused to issue to Tyrrell & Garth any certificate, except in conformity with the rules, regulations, forms, and rates fixed by the Board.

Under the above facts, Tyrrell & Garth filed this suit in the district court against the Title Company and the Board, to compel the performance of its contract, and to prevent the Board from interfering therewith.

We shall not attempt to detail the pleadings of the several parties. It is enough to say that they are sufficient to raise the questions of law we shall here decide.

The district court rendered judgment against Tyrrell & Garth. On appeal to the Court of Civil Appeals, that court reversed the judgment of the district court, and rendered judgment for Tyrrell & Garth. 79 S. W. (2d) 153. The Board brings error.

■ Every corporate charter issued by this State is issued with the power reserved in the State to "alter, reform or amend" it. Art. 1318, R. C. S., 1925.

The power reserved in the State to "alter, reform or amend" charters cannot be contracted away by the corporation. Jefferson Title & Guaranty Co. v. Tarver, 119 Texas, 410, 29 S. W. (2d) 316; Shaw v. Lone Star Building & Loan Assn. (Com. Appls.), 71 S. W. (2d) 863.

■ It is the rule that the contracts, and rates to be charged, by those engaged in a business affected by a public interest, may be regulated. Munn v. Illinois, 94 U. S., 113, 24 L. Ed., 77; Union Dry Goods Co. v. Georgia P. S. Corp., 248, U. S., 372, 63 L. Ed., 309, 39 Sup. Ct., 117, 9 A. L. R., 1420.

The business of insurance generally is now recognized to be one affected by public interest. 14 R. C. L., p. 857, and authorities there cited.

■ Title insurance is a kind or type of insurance. Minnesota v. Minn. Title Ins. Co., 104 Minn., 447, 116 N. W., 944, 19 L. R. A., (N. S.,), 639; People v. N. Y. Title & Mortgage Co., 346 Ill., 278, 178 N. E., 661; Title Ins. & Trust Co. v. Los Angeles, 61 Cal. Ap., 232, 214 Pac., 667; Trenton Potteries Co. v. Title Guarantee Co., 176 N. Y., 65, 68 N. E., 132.

It follows from the above that title insurance is a business of public interest, affected by public use; and, this being true, the Legislature has the power to provide reasonable rules and regulations governing its policy form and rates. 62 C. J., 1054; N. Y. Title & Mortgage Co. v. Tarver, 51 Fed., (2d) 584, and numerous authorities there cited; Id., 285 U. S., 524, 76 L. Ed., 922, 52 Sup. Ct., 313.

It is contended by Tyrrell & Garth that the rules and regulations promulgated by the Board, by authority of a law which

became effective after the contract between it and the Title Company was entered into, cannot be applied so as to affect such previous contract. We overrule this contention. The police power of the State to regulate the business of title insurance, as to forms of contracts and rates, cannot be contracted away by the Title Company. Shaw v. Lone Star Bldg. & Loan Assn., supra.

■ Tyrrell & Garth contend that it was not the legislative intent that the Act under consideration should be given the effect to make it illegal for the Title Company to carry out its contract with them previously made. It appears that this contention was sustained by the Court of Civil Appeals, and on such ruling that court based its judgment. We think the contention is without merit, and that the Court of Civil Appeals erred in sustaining it. A reading of the Act will demonstrate that it contains no exceptions. To the contrary, it contains language that negatives any such contention. Furthermore, it is not necessary to give this Act the construction that it can be held to except the contract here involved, to render it free from constitutional objections.

We desire to here especially call attention to the following portion of the above-quoted Act:

"Any company or other person interested, feeling injured by any action of the Board with regard to rates, shall have the right to file a suit in the District Court of Travis County, within thirty days after the Board has made such order, to review the action, in which suit the Court may enter a judgment correcting the Board's order and fixing such rates as may be proper, or affirming the action of the Board, Under no circumstances shall any rate of premium be charged for policies or underwriting contracts different from those fixed and promulgated by the Board, or those fixed in a final judgment of the Court as herein provided."

■ It will be noted that the portion of the Act last above quoted provides for a review of the rates fixed by the Board in the District Court of Travis County, at the instance of any company or person interested. This requirement is one of jurisdiction, and not of venue. Alpha Petroleum Co. v. Terrell, 122 Texas, 257, 59 S. W. (2d) 364. Of course, if the rate order is void on its fact, it can be attacked in any court otherwise having jurisdiction. Id. There is no attempt to show that the orders here involved are void on their faces. After providing for the review in the District Court of Travis County, the above-

mentioned Act then attempts to confer the power on such court to fix rates for title insurance after the court has adjudged the rates fixed by the Board illegal. Under our Constitution, the powers of government are divided into three distinct departments: legislative, executive, and judicial. Furthermore, it is expressly, and wisely, provided that no one of these departments shall exercise any power properly attached to either of the others, except in the instances expressly permitted by the Constitution itself. Section 1, Article II, Texas Constitution; Board of Water Engineers v. McKnight, 111 Texas, 82, 229 S. W., 301.

■ We think it is settled by the authorities of this State that rate-making, as that term is applied in cases such as this, is a legislative power, which can be delegated to a board or commission, under proper safeguards; but it does not appertain to the judicial department of our government. A court may review the rates fixed by a proper legislative authority, and may, in a proper case, adjudge such rates unjust or illegal; but there the power of the court ends. It cannot substitute its rates for those of the Board. To permit a court to do that would to be confer on it a legislative prerogative. 9 Tex. Jur., p. 456, and authorities there cited.

■ From what we have said it is evident that we hold that the part of the Act under consideration which attempts to confer the rate-making power on the District Court of Travis County is in contravention of Section 1, Article II, of our State Constitution. We are of the opinion, however, that this holding does not render the balance of the Act void. The part of the Act which is invalid can be eliminated or ignored, and the balance allowed to stand.

The judgment of the Court of Civil Appeals is reversed, and that of the district court affirmed.

Opinion delivered April 8, 1936.