

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann

AUSTIN 11, TEXAS

~~JOHN BEN SHEPPERD~~
ATTORNEY GENERAL

Honorable O. P. Lockhart
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-3763-A
Re: Reconsideration of Opinion
No. O-3763: Section 17 of
Senate Bill 135, Acts 46th
Legislature.

On the 4th day of August, 1941, this department rendered Opinion No. O-3763 in response to your request for our opinion upon the constitutionality of Section 17 of Senate Bill 135, Acts of the 46th Legislature, without reference to any particular mutual insurance contract or mutual insurance association. In deference to the request of certain associations, the attorneys of which have submitted briefs upon the question involved, we have carefully reconsidered this opinion.

The correctness of our original opinion has been assailed upon various propositions expressed in different briefs as follows:

"Since the persons insured are also the insurers of themselves and others in the organization and under the policies involved in this discussion, the mutual insurance organizations under consideration had the legal right, power and duty to reasonably increase rates or revise benefits, when necessary, before and after the enactment of Senate Bill 135."

"Before the passage of Senate Bill 135, it had been uniformly held in this and other jurisdictions that a mutual association has the inherent power to increase its assessment rates whenever it is reasonably necessary to enable it to pay its losses. This right is inherent in the very nature of such associations, because they have no capital stock, and the only source from which they derive funds with which to pay benefits is from assessments upon the members. Consequently, if the assessments are not sufficient to pay the losses and benefits provided under policies, it is obvious that the losses cannot be paid unless the assessments are increased. Furthermore, the history of such associations has shown that with the passing of years as the members grow older, there is a natural increase in the number of deaths which ultimately results in either decreased benefits or increased assessments."

"Consequently, before the passage of Senate Bill 135, the members of the association affected did not have a contract with the association either that their rate should remain such or that the maximum amount should be

should be paid, and under the law prior to the passage of Senate Bill 135, mutual associations could not make a contract to pay a definite amount, regardless of the amount realized from assessments."

"While other sections of Article 5068-1 may be unconstitutional for the very reasons given and under the authorities set out in the opinion of your department, it would mean that Section 17 is not subject to the objection which is the basis of such opinion because it makes no substantial change in the contracts which Commissioner Lockhart inquires about so as to have a retroactive effect upon the rights of the parties thereunder. Such Section 17 and Sections 11 and 32 of the Act merely make it mandatory upon the association to do what they were already authorized by their members and the then existing statutory law to do prior to the enactment of Article 5068-1."

If the premise of these contentions is that any mutual insurance association may validly, under the law in Texas, both raise rates and reduce benefits, it is incorrect. If, on the other hand, the premise is that the particular contracts of a particular mutual insurance association expressly, by contract, authorize the association either to raise rates or to reduce benefits, it is quite obvious that such contracts would be unaffected by Senate Bill 135 and would not require the authority granted in Section 17 of Senate Bill 135 to affect such changes. As to the latter contracts, if such do exist, the holding in our opinion that Section 17 of Senate Bill 135 is unconstitutional would have no significance.

Our original opinion No. O-3763 did not relate to any specific contract or association and, in the abstract, operated upon the usual and typical mutual insurance contract and mutual insurance association, regarding which, under the law in Texas, a reduction in benefits would constitute a repudiation of the contract.

Manifestly Section 17 of Senate Bill 135 cannot be held constitutional because perhaps, as to some contracts and as to some associations, it authorizes what otherwise could be done under the particular contract when, as to other contracts, it authorizes an impairment of the obligations thereof. In its broad application, and under the cases in Texas, Section 17 of said Bill 135 indisputably authorizes the impairment of obligations of contract. This being true, the fundamental question is whether or not the Act may be upheld as a valid exercise of the police power of the State.

Certainly, strong and persuasive considerations exist in justification of the exercise of the police power represented in Section 17 of Senate Bill 135. But the Supreme Court of Texas has unequivocally held that the rights and guarantees excepted from the powers of government by the Bill of Rights, and specifically the prohibition therein against any law impairing the obligation of contracts, is superior to and is not subject to, the police power of the State. Travelers' Insurance Company v. Marshall, 76 S.W. (2d) 1007, 124 Texas 45. Langever v. Miller, 76 S.W. (2d) 1025, 124 Texas 80. In the second mentioned case, Chief Justice Cureton said:

"In the case of Travelers' Insurance Company v. Marshall, this day decided (ante p. 45), we held that the existence of the present industrial depression, graphically described in the emergency clause to the measure before us, does not authorize the Legislature under the police power 'one of the general powers of government,' to enact even emergency legislation of a limited duration impairing the obligation of contracts. That opinion is controlling here, and if the Act before us 'impairs the obligation of contracts' it is unconstitutional and void, regardless of the occasion of its enactment." (Underscoring italics)

In the Travelers' Insurance case Judge Cureton declared:

"We recognize, of course, that the police power is broad and comprehensive; but the Constitution forbids its exercise when the result would be the destruction of the rights, guarantees, privileges, and restrains accepted from the powers of government by the Bill of Rights. . . .

"Since the impairment of the obligation of contracts is prohibited by Section 16, Article 1 of the Bill of Rights, without any specified exception in favor of legislative action to the contrary during industrial depressions or emergency periods, we are without power to write such an exception into the organic law. As said by one of the Texas authorities previously cited:

'The enactment of laws impairing the obligation of contracts is forbidden by Section 16 of Article 1 of the Constitution of Texas, . . . The limitation thus imposed is emphatic, unambiguous and without exception; it applies alike to all contracts and protects all obligations of contracts from destruction or impairment by subsequent legislation. . . .'" (Underscoring italics)

And the Supreme Court reached its conclusions in these two cases notwithstanding, and after recognizing the United States Supreme Court case of Home Building and Loan Association v. Blaisdell, 290 U. S. 398, 54 Supreme Court 231, 78 L. Ed. 413, 88 A.L.R. 1481.

The raising of rates aside, we are bound by the law in Texas that the reduction of benefits in a mutual insurance contract constitutes an impairment of the obligations of such contract. In Supreme Council American Legion of Honor v. Batte, 79 S.W. 629, it was said:

"In our opinion, however, the enactment of this by-law constituted a substantial repudiation of the contract. The benefit certificate upon its face provided for the payment of the sum of $5,000 out of the benefit fund of the order. The by-law was, in effect, an announcement that the appellant would only pay $2,000 out of the benefit fund, and would only pay the remaining $3,000 provided that amount could be paid out of the emergency fund of the order . . . The by-law itself was, in our opinion, unauthorized, and appellee might have treated it as void . . ."

Wirtz v. Sovereign Camp, W.O.W., 268 S.W. 438, by a special Supreme Court, expressly recognized and reaffirmed the doctrine of the Batte case as follows:

"It does not appear to us that the Batte case, 34 Tex. Civ. App. 456, 79 S. W. 629, militates against what has been said above. That case did not directly involve the question of the right to increase rates; but the association had issued a policy upon which they had agreed to pay, upon the death of the insured, $5,000, but it subsequently changed the contract so as to make it liable for only $2,000, and the Court of Civil Appeals held -- and we think properly -- that there was a repudiation of the contract. . . .

"That the stipulation or promise in a contract, such as is the basis of this action, that the insured will comply with and be bound by all future regulations or by-laws of the association, does not mean that the society may interfere with the essential purpose of the contract, viz., the payment of the indemnity promised, or, in other words, cannot be construed as authorizing the society to repudiate a plain contract is clearly settled there is no doubt. . . ."

"The distinction between reducing by means of a by-law or an amendment the amount stipulated in the most unqualified terms to be paid, and merely increasing by a by-law dues or assessments to such extent as is necessary to meet the exigency ensuing out of the changed financial condition of the association brought about by decrease of membership or death or other causes, is obvious.

"The first is a violation and repudiation of an unambiguous contract, while the other is not."

The doctrine of the Wirtz case was expressly recognized and reaffirmed in Supreme Lodge Ancient Order of Workmen v. Kemper, 155 S.W. (2d) 64, rehearing denied October 8, 1941. Before quoting with approval the above quoted language in the Wirtz case, the Beaumont Court of Civil Appeals said:

"The law will enforce the contractural right of a life insurance corporation to increase the amount of its monthly assessments against its members, Supreme Lodge K. of P. v. Mims, Tex. Civ. App., 167 S.W. 835. But the right to increase assessments does not authorize the corporation to diminish the amount payable under its certificate. . . ."

Therefore, Section 17 of Senate Bill 135 in its express authorization to mutual insurance associations to reduce benefits authorizes the impairment of obligations of contract, is violative of Section 16, Article 1, of the Texas Constitution, and cannot, under the pronouncements of the Supreme Court of Texas, be upheld as a valid and constitutional exercise of the police power of the State.

We regard it appropriate to state that we have fully considered the case of Daniel v. Tyrell and Garth Investment Company, 79 S.W. (2) 153

(Opinion by the Galveston Court), 93 S.W. (2d) 375, 127 Tex. 213 (Opinion by the Supreme Court), and the cases cited therein, in relation to the cases of Travelers' Insurance Company v. Marshall, and Langever v. Miller, supra. It is our conclusion that this case may not be considered as overruling or qualifying these earlier cases in their application to the subject matter of this opinion.

In connection with the Daniel v. Tyrell and Garth Company case, attention is called to the case of Fidelity Building and Loan Association v. Thompson, 45 S.W. (2d), 51 S.W. (2d) 578, the opinion in each being by Judge Critz.

We adhere to our original opinion in this matte r.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Zollie C. Steakley

Zollie C. Steakley
Assistant

ZCS:WFS:cgw

APPROVED DEC 8, 1941
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

This Opinion considered and
approved in limited conference.