

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

January 13, 1948

Hon. George B. Butler
Chairman, Board of Insurance Commissioners
Austin 14, Texas          Opinion No. V-474

> Re: The constitutionality of
> Section 2(A), House Bill
> 85, 50th Legislature,
> prohibiting any connec-
> tions between burial as-
> sociations.

Dear Sir:

Your request for an opinion regarding the above subject is two-fold:

1. The constitutionality of Section 2(A), of House Bill No. 85, 50th Legislature; and

2. Whether this Section of the Act applies to Burial Associations organized both before and after the effective date of the Act.

These questions will be discussed in the order stated.

Section 2(A) of House Bill 85, 50th Legislature, reads as follows:

"There shall be no connection directly or indirectly between two (2) or more Burial Associations. No member, director, or officer of one Burial Association shall be a member, director, or officer of any other Burial Association. No person whose husband, wife, or employee is an officer or director of one Burial Association shall be an officer or director of any other Burial Association. No funeral director, undertaker, or funeral home directly or indirectly connected with or designated by one Burial Association as

its funeral director, undertaker or fu-
neral home shall be connected with or
designated by any other Burial Association
as its funeral director, undertaker, or
funeral home to furnish its members with
its services and/or merchandise or to
service its policies or to be in any man-
ner connected with its affairs."

The caption of the Act creating a Burial As-
sociation Rate Board contains, among other things, the
following: ", . . making it unlawful for there to be
any connection between two (2) or more Burial Associa-
tions; . . ."

Prior to the passage of this Act, Article
4875-a-4, V.C.S., which prohibited in general terms any
connection between Burial Associations, read as follows:

"Art. 4875a-4. <u>Independent Associations</u>.--
There shall be no connection between any
two associations operating under this law
and no one association shall contribute any-
thing by way of salary or compensation to any
executive officer for the purposes of such
other associations."

In a former opinion, O-2879, by this Department, the fol-
lowing connections were held lawful under this Article:
(a) Where two Burial Associations designated the same fu-
neral home in their policies; (b) where there was a family
relationship between the officers of the two associations;
and, (c) where approximately 150 persons held policies in
both associations.  Later, another opinion, O-6956, re-
affirmed the legality of almost identical connections in
addition to these situations:  (a) Where two associations
appoint one agent to write policies in both associations;
and (b) where two associations occupy the same quarters
and share personnel as well as operating expenses.  In a
third opinion, O-5018, rendered after O-2879 and before
O-6956, the connection of interlocking or common officers
and directors for two associations was condemned.  These
rulings were each made in the light of Article 5068-1,
Section 23, V.C.S., which limits to $150.00 the value of
benefits allowed by Burial Associations.  The two asso-
ciations involved in O-2879 admitted that their purpose
was to provide benefits in excess of $150.00.  Such were
the views of this Department concerning the purposes of
Article 4875a-4, supra, up to the time of the enactment
of House Bill 85 of the 50th Legislature.

It has been contended in briefs filed in support of the proposition that this Act is unconstitutional that this section of House Bill 85 violates Section 35 of Article III of the Constitution of Texas, which provides:

"No bill, . . . shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

The first sentence of Section 2(A) is admittedly germane to the caption of the Act. The argument is aimed at the last three sentences of Section 2(A), which declare unlawful the very connections held lawful by this Department under Article 4875a-4, supra. The crux of the argument is that the wording of the caption failed to signal or inform the members of the Legislature or the public that such connections between burial associations held innocent by the Attorney General in the former opinions under Article 4875a-4, were on the threshold of being declared illegal in the body of the Act.

The general rule of construction harmoniously applied by all of the courts in these matters is that the title or caption of legislative acts shall be liberally construed so as not to violate the constitutional provisions. Gulf Insurance Company v. James, 143 Tex. 424, 185 S.W. (2d) 966; Board of Insurance Commissioners v. Sproles Motor Freight Lines (Civ. App.), 94 S.W. (2d) 769; 39 Tex. Jur. 95. It is also a common rule in construing captions or titles of legislative acts that where the provisions of the act are in any degree related or germane to the title or caption, the act will not be held unconstitutional. City of Beaumont v. Gulf States Utility Company (Civ. App.), 163 S.W. (2d) 426; Phillips v. Daniel (Civ. App.), 94 S.W. (2d) 1193, error refused. In the last-cited case it was stated:

"The law is settled that under the constitutional provisions referred to any number of provisions may be contained in the same bill or act, however diverse they may be; the only requirement being that they are consistent with the general object or subject,

> and have a mutual relation and connection, directly or indirectly, with the general subject or object of the act or bill."

Many cases were cited to uphold this ruling.

We cannot agree that any part of Section 2(A) is wholly unrelated or foreign to the caption of the Act. The connections condemned in this section are not indirectly, but directly, related to the subject of the Act. The real subject of this Act is the regulation of Burial Associations through the creation of a Burial Association Rate Board. As a part of this subject the Legislature has made it unlawful for there to be any connection between two or more Burial Associations. The first sentence of Section 2(A) is an almost word-for-word duplication of the related wording in the caption. The last three sentences of this Section simply specify certain particular connections which are unlawful. The 50th Legislature in so specifying these connections it deemed unlawful avoided the dilemma created under the old Article, 4875-a-4, supra. If the Legislature had done in that Article what the 50th Legislature has done in Section 2(A), there never would have been any necessity for questioning the purpose of Article 4875-a-4. And simply because the Attorney General in the prior opinions held certain connections to be lawful under that general statute is no reason for holding unconstitutional House Bill 85 of the 50th Legislature, which declares those same connections unlawful. It affords no basis for holding that Section 2(A) violates Section 35 of Article III of the Texas Constitution.

Section 2(A) applies to all Burial Associations without regard to whether they were organized before or after the effective date of the Act. The language is broad, clear and conclusive; no exemptions, exceptions, or conditions are contained therein. But conceivably, it may be urged that insofar as this Section applies to associations and their contractual relations existing prior to the effective date of the Act, it violates Article I, Section 16 of the Texas Constitution, prohibiting the making of any law impairing the obligations of a contract.

We recognize the limitations placed upon the State in the exercise of its police power to regulate an act or contract which affects the health, good morals, or the public welfare. Lone Star Gas Company v. Kelley,

140 Tex. 15, 165 S.W. (2d) 446; Nichols, Labor Commissioner v. Hart, 119 S.W. (2d) 1068. At the same time the authorities are uniform that if the regulation is a reasonable one and results in a benefit to the public, it does not violate the safeguards provided in the Constitution as to contracts.

We think a complete answer to this assertion is found in the case of Daniel v. Tyrrell and Garth Investment Company, 127 Tex. 213, 93 S.W. (2d) 372. There, a title insurance company contracted with Tyrrell and Garth to insure titles to its land. Later, the Legislature passed a law granting to the Board of Insurance Commissioners power to promulgate rates to be charged by title companies. Exercising this authority, the Board fixed a rate which materially changed the rate contracted for between the title company and Tyrrell and Garth, who contended in the suit that the previous contract could not be affected by such action of the Board. The Supreme Court's language which disposed of that contention is deemed appropriate to a disposition here. It was said:

"It is the rule that the contracts, and rates to be charged, by those engaged in a business affected by public interests, may be regulated. Munn v. Ill., 94 U.S. 113, 24 L. Ed. 77; Union Dry Goods Company v. Georgia T.S. Corporation, 248 U.S. 372, 39 Supreme Court, 117, 63 L. Ed. 309, 9 A.L.R. 1420.

"The business of insurance generally is now recognized to be one affected by public interests. 14 R.C.L. page 857, and authorities there cited.

". . . The police power of the State to regulate the business of title insurance, as to forms of contracts and rates, cannot be contracted away by the title companies. Shaw vs. Lone Star Building and Loan Association, supra."

Moreover, it is well established that parties who make contracts affecting the public interests, do so subject to the State's right to limit or prohibit the making of such contracts. See: International Brotherhood v. Huval, 140 Tex. 21, 166 S.W. (2d) 107.

From what we have said, we do not wish to be understood as ruling that associations unlawfully connected should be disposed of without regard to the vested rights and interests of the individual policyholders of such associations. It is our understanding that the Commission will promulgate reasonable regulations and requirements through the new Burial Association Rate Board which will give adequate protection to such policyholders. This can be achieved by permitting such association, under proposed rules by the Rate Board, to: (1) Service its deceased members until its affairs are closed; or (2) to reinsure its business in some other company (not a burial association) for cash benefits only; or (3) to convert all such associations wherein the benefits will be cash only. In this manner, the vested rights of individual policyholders of such associations will not be distrubed nor vitiated.

It is our opinion that the regulations contained in Section 2(A) are reasonable and that they result in a benefit to the public. The Legislature in the same Act, Section 2(B), specifically declared that such connections are against the public policy of this State as follows:

"It is against the public policy of this State for a Funeral Home or for those who own it in whole or in part to be connected directly or indirectly or affiliated with more than one Burial Association and the provisions of this Act shall be liberally construed and the Board of Insurance Commissioners shall make such rules and regulations as may be necessary to carry out the spirit and purpose of this Section."

Thus it will be seen that the Legislature wisely declared the clear purpose of the regulations and made liberal provisions for the Board of Insurance Commissioners to exercise the authority granted therein in a spirit of high regard for the welfare of the public. We are confident that in the exercise of this authority, the Board of Insurance Commissioners will exercise sound discretion in carrying out the spirit and purpose of this Act.

It is therefore our opinion that Section 2(A) of House Bill 85, 50th Legislature, does not violate any provision of the Texas Constitution, and that such Section applies to all burial associations whether organized before or after the effective date of the Act.

Hon. George B. Butler, Page 7 (V-474)

## SUMMARY

1.  House Bill 85, Section 2(A), 50th Legislature, does not violate Section 35 of Article III of the Texas Constitution, nor does it unconstitutionally impair existing contracts.

2.  Such Act applies to all burial associations organized before or after the effective date of the Act.  Daniel v. Tyrrell and Garth Investment Company, 127 Tex. 213, 93 S.W. (2d) 372.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Charles E. Crenshaw
Assistant

CEC:wb/JCP

APPROVED:

ACTING ATTORNEY GENERAL