No. 36,534

Roy D. Keehn, as Receiver of Central Mutual Insurance Company of Chicago, *Appellant,* v. Tom Stapleton, *Appellee.*

No. 36,587

Roy D. Keehn, as Receiver of Central Mutual Insurance Company of Chicago, *Appellant,* v. C. W. Kelley, *Appellee.*

(169 P. 2d 811)

Opinion filed June 8, 1946.

*Claude I. Depew,* of Wichita, agrued the cause; *W. E. Stanley, Lawrence Weigand, William C. Hook, L. E. Curfman,* and *Byron Brainerd,* all of Wichita, were on the briefs for the appellant; *Wm. H. Beckman, Daniel N. Healy* and *Chas. F. Hough,* all of Chicago, Ill., of counsel.

*Irwin H. Stearns, Francis W. Prosser,* both of Wichita, *Wm. L. Cunningham,* of Arkansas City, and *Roy C. Davis,* of Hutchinson, argued the cause for the appellees; *E. P. Villepigue,* of Wichita, and *O. C. Zwicker,* of Eureka, were on the briefs for appellee Tom Stapleton; *A. V. Roberts,* of Wichita, of counsel. *Warren H. White, Frank S. Hodge, Wm. H. Vernon* and *Eugene A. White,* all of Hutchinson, were on the briefs for appellee C. W. Kelley; *E. P. Villepigue,* of Wichita, and *Paul R. Wunsch,* of Kingman, of counsel.

*A. B. Mitchell,* attorney general, *Leon W. Lundblade,* assistant attorney general (for Charles F. Hobbs, Commissioner of Insurance), *George K. Melvin* and *John J. Riling,* both of Lawrence, as *amici curiae.*

The opinion of the court was delivered by

Burch, J.: The two cases, consolidated here on appeal, involve the right of a receiver for an insolvent Illinois mutual insurance company to recover assessments, adjudged necessary by an Illinois court, from policyholders in the state of Kansas. The district courts of Sedgwick and Reno counties in Kansas entered judgments for the respective defendants upon the pleadings and agreed stipulations of facts. The receiver appealed. A statement of facts will be made only to the extent necessary to make clear the questions essential to decision.

The Central Mutual Insurance Company of Chicago was incorporated under the laws of Illinois. It issued automobile insurance policies in some eighteen states, including Kansas, and the District of Columbia, until a receiver was appointed on January 11, 1937,

in a liquidation proceeding instituted in the Circuit Court of Cook County, Illinois, by the Illinois Director of Insurance. Such court found that the company was insolvent and ordered claimants and creditors to file their claims. Henry George Miller was appointed as statutory receiver for the company for the purpose of its liquidation and was succeeded by Roy D. Keehn, the appellant in these cases. On May 10, 1938, the receiver filed a petition in the liquidation proceedings, setting forth therein that the company was insolvent and that assessments on policyholders in the amount of 100 percent of their premiums were necessary. The insurance company resisted the petition and an answer resisting the petition also was filed by one large policyholder. Such policyholder was not a resident of the state of Kansas and the receiver does not contend that the policyholder which filed the answer had been issued its policy within the state of Kansas. A master in chancery heard evidence on the issues joined by the receiver's petition and the resisting answers. In March, 1940, an order was entered approving the master's report and directing the receiver to make the assessments of 100 percent of the expressed premiums on all individuals who, and corporations which, at any time from January 31, 1935, to January 11, 1937, both inclusive, were holders of a policy or policies of insurance issued by the company. Thereafter the receiver began the preparation of designated "assessment rolls," specifying therein the names of the policyholders and the amounts of assessments on groups of policies. As rapidly as these rolls could be prepared they were presented to the court and approved and demands mailed to the policyholders for the assessments due from them. The policies involved in these actions were included in assessment roll No. 8, which was approved January 29, 1941. On March 21, 1941, the receiver mailed to Tom Stapleton, appellee, two notices and demands for assessment, one on a certain policy for the amount of $132.50, and the other on another policy in the amount of $144. Both of these policies were in force for some time between January 31, 1935, and January 11, 1937. Each of the policies was to extend for one year from date. One was dated October 17, 1935, and the other June 13, 1936. The material facts are the same in the case against C. W. Kelley, appellee, except that his assessment was in the amount of $2,846.79. The two policyholders did not pay the assessments. The receiver sued them and we are informed, by stipulation, that he also brought separate similar suits against

some six hundred other residents of Kansas. Such cases are pending, waiting our decision in these appeals.

The suit against Kelley was filed February 19, 1945. The one against Stapleton was filed March 6, 1945. From the admissions in the pleadings and in the stipulations of facts filed in the cases arise certain salient, conceded facts which command cognizance. They follow.

On August 10, 1933, the company was first authorized to do business in Kansas. Then and thereafter the policies which it issued in the state of Kansas contained the following provision:

"Any and all provisions of this Policy, which are in conflict with the statutes of the state wherein this policy is issued are understood, declared and acknowledged by this Company to be amended to conform to such statutes."

When the company started doing business in Kansas there was and at all times since has been in full force and effect G. S. 1935, 40-1207, which reads in part as follows:

". . . No member shall be liable for any part of such contingent premium in excess of the amount demanded within one year after the termination of the policy."

(An amendment to the statute did not alter the part quoted. See G. S. 1945 Supp. 40-1207.) The statute applies to mutual insurance companies without distinction as to whether they are foreign or domestic. In addition it should be noted that at all times while the company was doing business in the state of Kansas G. S. 1935, 40-1210, was in full force and effect and it provides that a foreign mutual insurance company "shall be authorized to transact business in this state, to the extent and with the powers and privileges specified in this article." Therefore, the only power and privilege which the company had of collecting assessments on policies issued in Kansas were limited by the statutory provision that no member should be liable for any part of a contingent premium in excess of the amount demanded within one year after the termination of the policy. The power and privilege also were limited by reason of the provisions of G. S. 1935, 17-505, which reads:

"Any corporation organized under the laws of another state, territory, or foreign country, and authorized to do business in this state, shall be subject to the same provisions, judicial control, *restrictions,* and penalties, except as herein provided, as corporations organized under the laws of this state." (Emphasis supplied.)

The phrase "except as herein provided," in the statute does not refer

to any statutory immunities granted foreign mutual insurance companies. No amount was demanded by the company or by its receiver as a contingent premium from the appellees within one year after the termination of the policies involved in these cases.

In addition to the statutory contractual obligations, other significant factors develop. The involved policies were purchased in Kansas, were delivered in Kansas and the last act concerning their execution prior to delivery occurred when an agent for the company in Kansas countersigned the policies. In connection with the proceedings in the Illinois court, neither of the appellees was made a party and the receiver does not contend that any person who had purchased a policy in Kansas was a party to such proceeding. Of course, therefore, there was no service by publication upon either of the appellees and no other constructive service of any kind was made upon them. Whether they had any actual notice of the pendency of the actions remains undisclosed. It is contended that it was not necessary that the appellees be made parties or that service of any kind be made upon them. We pass the point for the moment since we are now setting forth only facts. The receiver has not shown that in the proceedings pending before the court in Illinois that any of the Kansas statutes, referred to herein, were introduced for the purpose of having that court consider or construe them.

Upon the foregoing factual background the receiver contends that the appellees must pay the assessments. Additional facts will be narrated if the necessity therefor develops in connection with the consideration of the vital legal questions. We proceed to consideration of the legal questions involved which, in the opinion of the court, control the controversy.

1. Nothing is to be gained by burdening the books with statements of all of the issues raised by the pleadings and of the many legal problems presented in the briefs filed by the numerous able counsel concerned with the cases. The receiver vigorously contends that the order or decree of the Illinois court fixing the 100 percent assessment upon all policyholders rose to the dignity of a judgment against each and all policyholders and must be accorded the full faith and credit required to be given judgments by article IV, section 1 of the constitution of the United States. Such article not only commands that "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State," but it adds "Congress may by general Laws, prescribe

the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Congress has exercised this power by Act of May 26, 1790, chap. 11, 1 Stat. 122, 28 U. S. C. A., § 687, which provides the manner of proof of judgments of one state in the courts of another and specifically directs that judgments "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken."

In support of such contention the receiver cites the parent case of *People, ex rel. Palmer v. Central Mut. Ins. Co.*, 313 Ill. App. 84, 39 N. E. 2d 400. The fact is emphasized that the appellees admittedly were policyholders of the company between the dates covered by the order of assessment. Relative to full faith and credit the receiver cites the following significant quotation from *Hansberry v. Lee*, 311 U. S. 32, 85 L. Ed. 22:

"It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process. *Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565; 1 Freeman, Judgments, 5th Ed. § 407. A judgment rendered in such circumstances is not entitled to the full faith and credit which the Constitution and statute of the United States, Rev. Stat. § 905, 28 U. S. C. A. § 687, prescribe, . . .

"To these general rules there is a recognized exception that, to an extent not precisely defined by judicial opinion, the judgment in a 'class' or 'representative' suit, to which some members of the class are parties may bind members of the class or those represented who were not made parties to it. [Citing *Smith v. Swormstedt*, 16 How. (U. S.) 288, 14 L. Ed. 942; *Supreme Council, R. A. v. Green*, 237 U. S. 531, 59 L Ed. 1089, 35 S. Ct. 724, L. R. A. 1916A 771; *Hartford L. Ins. Co. v. Ibs*, 237 U. S. 662, 59 L. Ed. 1165, 35 S. Ct. 692, L. R. A. 1916A 765; *Hartford L. Ins. Co. v. Barber*, 245 U. S. 146, 62 L. Ed. 208, 38 S. Ct. 54; *Supreme Tribe, B. H. v. Cauble*, 255 U. S. 356, 65 L. Ed. 673, 41 S. Ct. 338; cf. *Christopher v. Brusselback*, 302 U. S. 500, 82 L. Ed. 388, 58 S. Ct. 350.]" (pp. 40, 41.) (Emphasis supplied.)

The receiver contends that even though the appellees were not parties and were not served with any process in the action pending before the Illinois court, nevertheless, because the company, of which the appellees were members, defended vigorously there, the action was binding upon them in all respects as members of a "class." Particular emphasis is placed upon *Pink v. A. A. A. Highway Express*, 314 U. S. 201, 86 L. Ed. 152, 62 S. Ct. 241, in which it was held that such a principle has been consistently applied to mutual insurance associations where the fact that the policyholders

were members was not contested. (Citing *Broderick v. Rosner*, 294 U. S. 629, 79 L. Ed. 1100, 55 S. Ct. 589.)

Counsel for the receiver also select and stress *Converse v. Hamilton*, 224 U. S. 243, 56 L. Ed. 749, and cite many cases from state appellate courts showing that the rule has been adopted by such states. We quote from appellant's brief:

"Reference to the official report (313 Ill. App. 84) indicates that the fact of insolvency, the necessity of an assessment, the amount thereof were all the subject of vigorous, able contest . . . not only by the Company 'standing in judgment' for its members, but also by a policyholder who was permitted to intervene."

Probably it is not necessary to labor longer with the contention since enough has been said to show the position taken by the receiver and that his contentions may be supported by formidable authorities.

Any attempt to analyze all of the cases heretofore shown as cited by the receiver and the many more also cited in his behalf would prolong this opinion into a treatise upon the full faith and credit clause of the constitution. Also it should be said that it is difficult, indeed, to reconcile readily all of the cases cited by the many lawyers for the litigants. For a general statement of the rule to the effect that there are many exceptions to the full faith and credit clause, perhaps we can turn to no better authority than the late Mr. Chief Justice Stone, from whose opinion in *Milwaukee County v. White Co.* (which was a tax case), 296 U. S. 268, 80 L. Ed. 220, we quote the following:

"Such exceptions as there may be to this all-inclusive command is one which is implied from the nature of our dual system of government, and recognizes that consistently with the full faith and credit clause there may be limits to the extent to which the policy of one state, in many respects sovereign, may be subordinated to the policy of another. That there are exceptions has often been pointed out [citing *Broderick v. Rosner*, 294 U. S. 629, 642, 79 L. Ed. 1100, 1107, 55 S. Ct. 589, and nine additional decisions of the Supreme Court of the United States.]" (p. 273.)

One of the fundamental requirements of a judgment, entitled to full faith and credit, is that the court entering it, had complete jurisdiction. In the comparatively early case of *Hale v. Allinson*, 188 U. S. 56, 47 L. Ed. 380, which involved an effort on the part of a receiver, appointed by a court of equity, to enforce statutory liability of stockholders of an insolvent corporation, the supreme court of the United States set forth the general principles involved, as follows:

"Is there, upon the complainant's theory of this case, any such common interest among these defendants as to the questions of fact that may be put in issue between them and the plaintiff? Each defendant's defense may, and in all probability will, depend upon totally different facts, upon distinct and particular contracts, made at different times, and in establishing a defense, even of like character, different witnesses would probably be required for each defendant, and no defendant has any interest with another." (p. 78.)

We quote further from the opinion:

"The facts surrounding the present case and the reasons for holding that they do not bring it within the principle of preventing a multiplicity of suits are so well stated in the opinion of McPherson, District Judge, in this case (102 Fed. 790), that we quote the same. After speaking of the alleged conclusiveness of the Minnesota decree upon the question therein decided, the judge continued:

" 'Thereafter a different question arose for determination, namely, Can the assessment be lawfully enforced against the individuals charged therewith? And in this question the interest of each stockholder is separate and distinct. The bill asserts the conclusiveness of the Minnesota decree upon the defendants, so far as the necessity for the assessment and the amount charged against each stockholder are concerned. *Hancock Nat. Bank v. Farnum,* 176 U. S. 640, 44 L. Ed. 619, 20 Sup. Ct. Rep. 506. Assuming that position to be sound (and, if I do not so assume it; if these questions are still open for determination, so far as the Pennsylvania stockholders are to be affected,—the bill must fail for want of necessary parties), it is clear that only two classes of questions remain to be decided: The first is whether a given stockholder was ever liable as such; and the second is whether, if he were originally liable, his liability has ceased, either in whole or in part. Manifestly, as it seems to me, the defendants have no common interest in these questions, or in the relief sought by the receiver against each defendant. The receiver's cause of action against each defendant is, no doubt, similar to his cause of action against every other, but this is only part of the matter. The real issue, the actual dispute, can only be known after each defendant has set up his defense, and defenses may vary so widely that no two controversies may be exactly or even nearly alike. If, as is sure to happen, differing defenses are put in by different defendants, the bill evidently becomes a single proceeding only in name. In reality it is a congeries of suits with little relation to each other, except there is a common plaintiff who has similar claims against many persons. But as each of these persons became liable, if at all, by reason of a contract entered into by himself alone, with the making of which his codefendants had nothing whatever to do, so he continues to be liable, if at all, because he himself, and not they, has done nothing to discharge the liability. . . .' " (p. 79.)

We quote further from the opinion:

"We are in accord with the views thus expressed, and we therefore must deny the jurisdiction of equity, so far as it is based upon the asserted prevention of a multiplicity of suits.

"2. There remains the further question of maintaining the suit on the ground

that it is ancillary or auxiliary to the decree of the Minnesota court, and aids in its enforcement. We think this contention cannot be sustained.

"In the first place, all the nonresident stockholders were but nominal parties in the Minnesota suit. Their names were merely placed in its title. No service of process was ever made on one of them, and as the suit was not one in which service by publication of process could be ordered, there was nothing in the nature of the suit to give them notice or to enable the court to give judgment against them without their appearing. The court did not assume to give any such judgment. Indeed, the complainant averred there were no means of obtaining jurisdiction over the nonresident stockholders, and the court assumed that it had no jurisdiction over them, and on account of such lack of jurisdiction it only gave judgment against those resident stockholders who were parties to the suit. The complainant claims that the nonresident stockholders are bound because the corporation was a party, not because they were parties to the suit. There is no decree or judgment, therefore, against the stockholders who were nonresidents. The claim that they are bound by certain findings of fact by the court, because of the corporation being a party and in law representing them to that extent, assuming it for this purpose to be well founded, is far from transforming a decree against resident stockholders into one against nonresidents who were not parties to the action. Even assuming that the decree concludes them upon certain facts found in that action, where there was no decree against them, still, another action in another jurisdiction to enforce their liability as originally created by statute cannot, within any reason, be said to be one to enforce the former judgment. Indeed, it is because of the very fact that no judgment was or could be obtained against the nonresident stockholders in the Minnesota suit that the Pennsylvania Federal court is asked to exercise its jurisdiction and give judgment against the defendants on their statutory liability. This does not make the Pennsylvania suit ancillary to the Minnesota decree for the purpose of enforcing it, for there is no decree against them to be enforced. There is only a claim that they are bound by certain facts found in another action to which they were not parties in any but a merely formal and nominal sense.

"We think that, upon grounds discussed herein, *the judgments of the courts below were right, and they are therefore affirmed.*" (p. 80.) (Emphasis supplied.)

*Hale v. Allison,* supra, never has been overruled so far as we have been able to ascertain and still stands as a sound expression from the supreme court of the United States upon the general question of jurisdiction presented here. The fact that the court in the cited case assumed that it had no jurisdiction over the nonresident stockholders only emphasizes the necessity of their being made parties in some manner. It is true that the receiver was a chancery receiver rather than a statutory receiver but the result did not turn upon any such distinction. The case has been frequently followed. From the case of *Fidelity Trust & Safe Deposit Co. v. Archer,* 179 Fed. 32 (certiorari denied May 11, 1910, 217 U. S. 606), decided by the

Circuit Court of Appeals for the Third Circuit, the headnote is quoted as follows:

"A federal court of equity is without jurisdiction of a suit by the receiver of an insolvent corporation against numerous stockholders to enforce payment of an assessment of a, fixed sum per share on its stock, made by authority of a court in another jurisdiction in a suit to wind up the affairs of the corporation to which suit the defendant stockholders were not individually parties, either on the ground of preventing a multiplicity of suits, or on the ground that it is ancillary to the main suit, where it does not appear that there is any ground of defense common to the defendants, and the bill does not pray for any equitable relief, but merely seeks to collect from each defendant a definite sum as the assessment against his stock."

The opinion in the last-cited case develops that there is no distinction in principle so far as jurisdiction in equity or law is concerned.

In the case of *Hunt v. Whewell*, 122 Wis. 33, 99 N. W. 599, it was said:

"Now we face a Minnesota legislative enactment to the effect that the court in such original suit may, in a summary proceeding to which such a stockholder is not a party, fix the amount for which he must respond upon such extraordinary liability, and the time when and the person to whom the same must be paid, and that the determination shall be regarded as a bar to every defense to such liability in any court anywhere. It is hard to conceive of anything more drastic than that. The literal effect thereof is to make the Wisconsin court in this case a mere instrument to execute the commands of a foreign court against one of its citizens in a proceeding to which he was not a party and may not even have had notice of. It is useless to discuss such an unreasonable proposition as that a mere legislative enactment of a state has such extraterritorial force that it can so supplement the authority of its courts as to make their judgments and orders as to persons over which they have no jurisdiction and who reside in another state, binding upon such persons in the courts of such other state, when otherwise they would not be." (p. 40.)

The cited case was determined upon the authority of *Finney v. Guy*, 106 Wis. 256, 82 N. W. 595, 49 L. R. A. 486, sustained by the United States supreme court in 189 U. S. 335, 23 Sup. Ct. 558, 47 L. Ed. 839. In discussing such case the Wisconsin supreme court had the following to say:

"The decision here was grounded on the idea that it is contrary to the policy of our laws to allow our citizens to be pursued in the manner there proposed, and that to permit our courts to be used as desired would inflict injustice upon our people, the protection of whom is the primary duty of such courts. As above indicated, the federal Supreme Court held this court to be supreme in its own jurisdiction in that field." (122 Wis. 42.)

We are not concerned in these appeals with the distinctions be-

tween law and equity but we note that the receiver relies largely upon equity cases. The general principles involved as to jurisdiction are for our purposes the same. We note also in passing that the case relied upon by the receiver, to wit, *Converse v. Hamilton*, supra (224 U. S. 243, 56 L. Ed. 749) clearly holds as follows:

".   .   .   while the order levying the assessment is made conclusive, as against all stockholders, of all matters relating to the amount and propriety of the assessment and the necessity therefor, one against whom it is sought to be enforced is not precluded from showing that he is not a stockholder, or is not the holder of as many shares as is alleged, or has a claim against the corporation which, in law or equity, he is entitled to set off against the assessment, *or has any other defense personal to himself*, . . ." (p. 256.) (Emphasis supplied.)

We pause at this point to consider further the factual situation upon which the receiver seeks to prevail. Again we observe that there is nothing in the record before us showing that the Illinois court was even cognizant of the Kansas statutes. No one to whom a policy had been issued in Kansas was a party to the proceeding in Illinois. The fact prominently appears that when the receiver was appointed he obtained such rights as the policies issued by the company in the various eighteen states provided. As was said in *Hollander v. Heaslip*, 222 Fed. 808:

"The rule generally applicable is that a receiver cannot maintain an action upon an obligation running to the original party which the latter could not have maintained. [Citing High on Receivers, 4th ed., §§ 204, 205.]" (p. 812.)

In this connection it should be noted that the applicable statute of Illinois did not vest in the receiver any rights in addition to those vested in the company at the time of the order directing its liquidation. The Illinois statute reads:

".   .   .   such receiver shall be vested by operation of law with title to all of the property, *contracts and rights of action of such company* as of the date of the order so directing liquidation." (*Smith-Hurd*, Ill. Rev. Stat. 1935, ch. 73, sec. 498.) (Emphasis supplied.)

What were the contract rights obtained by the receiver? The right to make the assessments arose purely and solely from the statutory contracts. As was said by Mr. Justice Holmes in *Thomas v. Matthiessen*, 232 U. S. 221, 58 L. Ed. 577: "But such obligations when imposed upon the members of a corporation may vary very largely." (p. 235.)

In these cases the obligations of the policyholders varied with the statutory variations of the eighteen states in which the company

had issued policies because the company voluntarily had seen fit to adopt the statutory provisions enacted by the respective states as a part of the provisions of the policies. It must follow, therefore, that the policyholders were not of one "class" but of many different "classes." It must follow, also, that since the policies issued in Kansas in effect provided that no assessment could be made "in excess of the amount demanded within one year after the termination of the policy" the receiver obtained no greater right than that given him by the contractual provisions of the statutes and policies. Such must be sound unless Illinois had in effect a statute, public act, or judicial decision which, in effect, vitiates the Kansas statute. We have not been cited any decision from Illinois or any other state which declares our statute or a similar statute void. As we read the decision in the parent case, *People, ex rel. Palmer v. Central Mut. Ins. Co.*, supra, there is nothing whatever in it which, even by implication, holds that our statute is void. The order or decree did determine that the company was insolvent and that all policyholders should pay 100 percent assessments but that decree did not purport to cut off and forever deny to policyholders any proper defense which might be personal to them. (See *Royal Arcanum v. Green*, 237 U. S. 531, 35 Sup. Ct. Rep. 724, 728, 59 L. Ed. 1089, and also, *Great Western Telegraph Co. v. Purdy*, 162 U. S. 329, 16 Sup. Ct. Rep. 810, 813, 40 L. Ed. 986, where a similar order of assessment was made.) Incidentally, the supreme court of Illinois has declared the law to be:

"A foreign corporation will not be allowed to do business in this state on more favorable conditions than those prescribed by law for domestic corporations . . ." (*The People v. New York T. & M. Co.*, 346 Ill. 278, 178 N. E. 661, 664, citing Thompson on Corporations, 2d Ed., sec. 6628, and *Monarch Disc. Co. v. C. & O. Ry. Co.*, 285 Ill. 233.) (p. 286.)

It is stated in the brief of the receiver that at the time of the litigation there was no Illinois statute expressly referring to a limitation on the time in which assessments could be collected. Consequently, there was no conflict between the Illinois statute and our own. Illinois simply had not enacted any such legislation. Later Illinois did enact a statute very similar to our own. It reads:

"No member shall be liable for an assessment unless notified of the company's claim therefor within one year after the termination of the policy whether by expiration, cancellation or otherwise." (Ill. Rev. Stat. 1945, ch. 73, sec. 672.)

When such statute was considered by the court in Illinois it held

only that the statute was not retroactive. But it did not hold that such statute was void or that it did not apply to receivers appointed for insolvent mutual insurance companies. Therefore, we fail to find that Illinois, by decision or statute, has declared our applicable statute to be invalid or not binding on the receiver.

Since the appellees were not made parties to the Illinois action and no other holders of policies issued in Kansas were parties to such action, it cannot be said that they were represented as a class and thus had any opportunity to present a defense even though they were all policyholders in the same mutual company. Such is sound because the provisions of the policies issued in Kansas were not before the Illinois court and because the statutes and decisions of 'Illinois do not conflict with our own. For such reasons and others we conclude that the order or decree fixing the assessments in Illinois is not entitled to the force of a judgment which must be given full faith and credit and denies to the Kansas policyholders the right to assert any defense which they may have personal to themselves. Michigan has recently reached the same conclusion in *Keehn v. Charles J. Rogers, Inc.*, 311 Mich. 416, 18 N. W. 2d 877 (certiorari denied, 66 S. Ct. 491), and Ohio has held the same in substance in *Keehn v. Hodge Drive-It-Yourself*, 146 Ohio St. 45, 64 N. E. 2d 117.

2. The receiver contends that our statute applicable to assessments cannot be considered as a personal privilege. We think to the contrary under the authority of *Hazen v. Ferriter*, 124 Kan. 261, 259 Pac. 788, wherein we said: "The statute of limitations has always been considered a personal privilege" (p. 263), and *Sanger v. Nightingale*, 122 U. S. 176, 30 L. Ed. 1105, headnote one of which reads as follows: "The right to plead the statute of limitations is a personal privilege of which the debtor can avail himself or not, as he may choose."

3. The receiver asserts further that our statute limiting the time in which assessment can be made is not a statute of limitations. Perhaps technically it is not but it is in the nature thereof and is equally effective. Such statutes regulate the remedy and must be considered as remedial restrictions, the noncompliance with which prevents recovery, even within the periods provided by general statutes of limitations. We have here cases in which the contracts were clearly executed within the state of Kansas. They were Kansas contracts. (See *Davis v. Jacob Dold Packing Co.*,

140 Kan. 644, 38 P. 2d 107, in which we quoted from Restatement, Contracts, section 74, as follows: "A contract is made at the time when the last act necessary for its formation is done, and at the place where that final act is done." (p. 645.) Such seems also to be the settled law of Illinois. (See *Rose v. Mutual Life Ins. Co.*, 240 Ill. 45.) The receiver seeks to enforce the contract in Kansas. Therefore, he is bound by the restrictions which affect the right of remedy in Kansas. In such circumstances matters of remedy are governed by the law of the forum regardless of comity and frequently irrespective of the full faith and credit afforded foreign judgments. (See 11 Am. Jur. 498, 500, § 186.) The supreme court of the United States recently has held also in the case of *State Farm Ins. Co. v. Duel*, 324 U. S. 154, 65 Sup. Ct. Rep. 573, 89 L. Ed. 812, as follows:

"The full faith and credit provision may not be used to compel one State 'to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.' [citing cases.] He who challenges the power of one State to enforce in its own courts its own statutes on such grounds carries the burden of showing that 'of the conflicting interests involved those of the foreign state are superior to those of the forum.' [citing cases.] That burden has not been carried here." (p. 160.)

Similar statutes restricting remedies are quite common. We have them with respect to claims against cities, the state highway commission, and in other instances. They are not limited in scope of application to cases involving state entities. A claim for workmen's compensation must be made within the period provided by the statute and a claim must be filed in a probate court within a limited statutory period. Such statutes are valid and have been consistently upheld by the courts. (*Hurst v. Hammel*, 153 Kan. 827, 113 P. 2d 1045; *Smith v. Process Co.*, 100 Kan. 40, 163 Pac. 645.) See, also, *Hornick v. Catholic Slovak Union*, 115 Kan. 597, 224 Pac. 486; *Maurer v. Northwestern Iron Co.*, 151 Wis. 172, 138 N. W. 636; *Schmidt v. City of Fremont*, 70 Neb. 577, 97 N. W. 830, 831; *Belkin v. Iowa Falls*, 122 Iowa 430, 98 N. W. 296; and *Van Auken v. City of Adrian*, 135 Mich. 534, 98 N. W. 15.

4. The receiver asserts, however, that the statute was never intended by the legislature to be applicable in cases in which a receiver had been appointed for a mutual insurance company. Such contention finds some support in the dissenting opinion filed in the recent case of *Keehn v. Hodge Drive-It-Yourself,* supra. It is true that a situation might develop, as it probably did in this case,

wherein it would be very difficult for a receiver to have the assessments levied within a year after the expiration or cancellation of a policy. The inherent weakness in the argument, however, arises by realization that we are now well into the second century, at least, in which receivers for insurance companies have been attempting to collect assessments against policyholders. Such assessments are as often asserted by receivers as by companies. Consequently, it cannot be said that the legislature, in enacting our statute, had no basis for contemplation of the necessity for an exception in the event of receivership. No such exception was placed in our statute by the legislature and if we were to add such an exception by judicial interpretation we would be creating legislation rather than construing it. The receiver, in substance, concedes that ordinarily the necessity for such an exception is a problem for the legislature but insists that this court should not paralyze and frustrate the liquidation of a foreign insurance company. The argument seems to be based upon the assumption that the receiver in these cases, by reason of the operation of the Kansas statute, lost the right to recover because of the failure to assert it before he ever obtained it. In other words, when the receiver obtained the right to have the assessments made the statute previously had run on the policies issued in Kansas. In support of such contention the receiver cites *Bernheimer v. Converse,* 206 U. S. 516, 51 L. Ed. 1163, *Hawkins v. Glenn,* 131 U. S. 319, 333, 33 L. Ed. 184, and many other cases to the effect that courts frequently have held that to deprive a man of remedy for enforcing a contract is itself a mode of impairing the validity of a contract. It seems to us that the obvious answer is that the receiver in these cases never acquired contracts which he could enforce in Kansas or that they simply were not enforced within the time in which they were enforceable. The difficulty reverts to frailties in the contracts which the company saw fit to execute in Kansas. The same difficulty might be encountered by domestic companies operating in Kansas but if so, the remedy would remain a subject for legislative attention rather than for judicial construction.

5. The final contention of the receiver is that the provision in the Kansas insurance code regulates and unreasonably burdens interstate commerce. The argument proceeds upon the presumption that since the decision of the United States supreme court in *U. S. v. Underwriters Assn.,* 322 U. S. 533, 64 Sup. Ct. Rep. 1162, 88 L. Ed. 1440, insurance, in all of its aspects, must be regarded as

interstate commerce. Assuming, but without conceding for a second, that such is the settled law, nevertheless, the courts no longer adhere to the rule that the sovereign states cannot regulate interstate commerce in any manner. As long as such regulations are not unreasonably burdensome, are nondiscriminatory and do not conflict with any power which has been exercised by congress they are valid and do not violate any constitutional guaranties. In so far as insurance is concerned, congress has declared such to be its policy by the passage of the so-called McCarran-Ferguson Act (15 U. S. C. § 1011-1015). This court recently held in *In re Insurance Tax Cases,* 160 Kan. 300, 161 P. 2d 726, that by reason of such law congress has left the matter of regulation and taxation of insurance companies to the states. (See the opinion by Mr. Chief Justice Harvey, p. 313.) The receiver in these cases does not point out wherein our statute creates an unjust or unreasonable burden upon insurance and it cannot be said that the statute is discriminatory because it applies alike to domestic as well as to foreign insurance companies. Also, it should be observed that the solvency of insurance companies, selling policies in this state, and the necessity for prompt assessments to assure the incident safety, are matters of local concern. Sifted to its substance, the argument relative to our statute regulating or burdening interstate commerce crystalizes into the contention that Illinois, by statute and judicial decision, can regulate asserted interstate commerce, but Kansas cannot. Of course, we find no force therein. (See, also, *Robertson v. California,* 66 S. Ct. 1160, and *Prudential Ins. Co. of America v. Benjamin,* 66 S. Ct. 1142, decided by the supreme court of the United States as of June 3, 1946.)

The judgments of the district courts are affirmed.