No. 37,699

STELLA MISNER, *Appellant,* v. C. E. HAWTHORNE, doing business as Southern Kansas Lines, and KEYSTONE MUTUAL CASUALTY COMPANY, a corporation, *Appellees.*

(212 P. 2d 336)

Opinion filed December 10, 1949.

*M. F. Litras,* of El Dorado, argued the cause, and was on the briefs for the appellant.

*Byron Brainerd,* of Wichita, argued the cause, and *Claude I. Depew, W. E. Stanley, Lawrence Weigand, William C. Hook, Lawrence E. Curfman,* and *Wm. C. Kandt,* all of Wichita, were on the briefs for appellees and cross-appellants.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for damages for personal injuries in which the defendants demurred to plaintiff's evidence. This was tentatively overruled, with a final hearing upon it reserved. The trial resulted in a verdict for plaintiff for $4,750. Thereafter demurrers were argued and sustained and judgment rendered for defendants. Plaintiff has appealed from the ruling and judgment. The defendant insurer has filed a cross-appeal. We will deal first with plaintiff's appeal.

The facts disclosed by the record may be summarized as follows: Plaintiff's petition, filed April 28, 1947, alleged plaintiff is a resident of Douglass, Kan.; that the defendant, C. E. Hawthorne, a resident of Independence, Kan., was engaged in operating a commercial bus line within the state under the firm name and style of Southern Kansas Lines (hereinafter referred to as the bus company) and was operating a commercial bus line between Severy, Kan., and Wichita over U. S. Highways Nos. 96 and 54, intrastate, under a certificate of convenience and necessity issued to it by the Kansas state corporation commission and pursuant thereto; that in conformity with our statute (G. S. 1935, 66-1,128) and with the rules and regulations of the state corporation commission, and as a condition precedent to his right to engage in the business of transporting passengers for hire and as a common carrier of passengers within the state, there was issued to him, on January 22, 1945, to be in effect for one year thereafter, by the defendant, Keystone Mutual Casualty Company, a corporation, a liability insurance policy, which was in full force and effect on the first day of June, 1945, a copy of which insurance policy was attached to the petition and made a part thereof; that on June 1, 1945, plaintiff purchased from the defendant bus company a ticket entitling her to safe transportation on the lines of the bus company from the bus stop at the Yandell filling station on U. S. Highway No. 96, to Augusta, Kan., and boarded one of the bus company's buses and was received as a passenger thereon; that the bus was being driven by one Clair V. Moore, the agent, servant and employee of the bus company, and was so negligently, carelessly and improperly managed, operated and driven by said Moore that the bus violently crashed into the side of a bridge on said highway, with such impact and force that the right side of the bus upon which plaintiff was a passenger was

ripped and torn open and plaintiff was thrown violently to the floor of the bus and was seriously injured, which injuries were described; that the negligent operation of the bus by Moore "consisted of the operation of said bus, which was wholly within said driver's control, in such a reckless, negligent and careless manner so as to cause this plaintiff to be injured; that this plaintiff does not know and is unable to state the specific acts or omissions of the defendant bus company and its servant, agent or employee which caused her to be so injured and that because of plaintiff's lack of knowledge as to the specific items of negligence or omissions she is unable to set them out and describe them herein; that said specific items of negligence or omissions are wholly within the knowledge of the defendant bus company and its agents, servant or employee."

To this petition defendants filed a motion for an order requiring plaintiff to make her petition more definite and certain by setting out the acts and omissions of defendant, or its agents, servants or employees which plaintiff claims constitute negligence and which are the sole and proximate cause of plaintiff's injuries. Upon the hearing of this motion, at which plaintiff and defendants were represented by counsel, plaintiff, by her attorney, in open court, announced that she was proceeding upon the doctrine of *res ipsa loquitur*, whereupon defendants withdrew their motion, and the court gave them fifteen days in which to further plead. The defendant bus company filed a demurrer to the petition, which was overruled, and then filed an answer in which it admitted Hawthorne's residence and that he was doing business under the name of the Southern Kansas Lines, and denied each and all of the other allegations of plaintiff's petition and alleged that if plaintiff was injured at the time and place stated in her petition her injuries were not due to any negligent, careless or improper management upon the part of the bus company, its agents, servants or employees.

At the beginning of the trial on March 25, 1948, the defendants respectively moved for judgment in their favor upon the pleadings. These motions were overruled and they objected to the introduction of any evidence, which objection was overruled.

Prior to the taking of testimony it was stipulated by plaintiff and defendants "that Stella Misner was a fare paying passenger on defendant bus company's bus at the time of the accident on June 1, 1945, and further that defendant C. E. Hawthorne was a resident of Montgomery county, Kansas, and as an individual, did business

under the firm name of Southern Kansas Lines; that defendant Hawthorne was acting as a common carrier of passengers and covered by a liability policy at the time issued by defendant Keystone Mutual Casualty Company, a corporation, and that policy was on file with secretary of state of state of Kansas."

Plaintiff, called as a witness, testified that she was fifty-seven years of age and by occupation a seamstress; that on June 1, 1945, about noon, she and her father-in-law, J. E. Misner, went to the Yandell corner, where there was a bus station of the defendant bus company on U. S. Highway No. 96, paid their fares and boarded a bus of the defendant bus company. The bus was full of passengers, except the rear seat, which was across the full width of the rear of the bus. She sat on the rear full-width seat facing the aisle. The bus was headed west along Highway No. 96 and proceeded to a point east of Leon Junction, where there were three bridges. The first two bridges were crossed safely, but on the west bridge the bus crashed against the north side of the bridge. The whole north side of the bus was torn out and was crumpled and rolled up against the bridge. Seats were twisted and suitcases scattered. Plaintiff was thrown forward and could not distinguish any particular thing that was going on, except she could hear the shrieking and screaming of the people and the tearing and rapping of the bus. She was "knocked out." When she came to she was down in the aisle against the middle seat. She received a broken arm and was bruised on the right side from her arm to the instep and suffered chest pains and shock. She could not get off the bus, but did get up. The bus driver did not help her and she had no conversation with him. A nurse and a man finally helped her out of the bus and took her to a doctor's office. She was asked and answered the following questions:

"Q. During any portion of this drive, or rather ride to this bridge, near this station at the Leon corner, did you have any control, management or direction over the conduct of that driver of that bus? A. Certainly not.

"Q. Do you know what happened that caused the accident there? A. I have no idea what caused the accident. I felt it and heard it and saw afterwards the result.

"Q. You got the result, but you don't know what caused it? A. No."

She further testified to the nature of her injuries, employment, occupation and damage and the cross-examination pertaining to those matters.

J. E. Misner, eighty-six years of age, a retired farmer and the father-in-law of plaintiff, testified that he and plaintiff purchased

the tickets and got on the bus and sat on the rear seat; that the bus proceeded west to the point of the accident on the bridge; that when the bus struck the bridge everything was done so quickly that he didn't know much for a second or so. He was cut about the eyes and because of the bleeding he could not see anything. He got off the bus, washed his face, went back to the bus and noticed the north side of it was torn out. The plaintiff was still on the bus. He helped her off and accompanied her to the doctor's office.

Ruth Nutter, who lives in Wichita, had boarded the bus at Independence and first met plaintiff that day. Her two children were with her. She testified:

"We were riding along and I think I went to sleep or I was knocked out, I don't know which. When I came to, I was lying on floor between the two seats on driver's side about middle of bus. . . . The north side of the bus was all torn out; my children and I went out of bus through the opened side. I heard no conversation between driver and anyone else before the crash but I did after the crash. I heard a lady, whose name I do not know, but she sat on one of the front seats, verbally jump on driver for sleeping along the way. I heard this lady say 'I told you several times you had better wake up, you were going to have a wreck. You have already run off the road two or three times.'. The driver said he wasn't asleep, he was side-swiped. Later the driver said to me: 'I don't want to add anything; I have already made my remarks.'"

The witness went to a telephone to call her parents and then went back to the bus. She looked on the south side of the bus and there were no marks on it that might have resulted from its being side-swiped. This testimony was all objected to by defendants and the objection overruled. There was testimony of two medical witnesses which related to the nature and extent of plaintiff's injuries.

At the close of plaintiff's evidence each of the defendants demurred to the evidence "for the reason that it does not prove a cause of action or sustain the burden of proof on the part of the plaintiff."

The court remarked: "There is a good question in this case. I am going to reserve ruling on it at this time and it may be I will have to sustain this demurrer."

Defendants called a medical witness who had examined plaintiff thirty-three months after the date of the accident pertaining to the nature of plaintiff's injuries. The trial proceeded, resulting in a verdict for plaintiff against both defendants for $4,750. Thereafter it appears defendants filed a motion for judgment notwithstanding the general verdict and a motion for a new trial, and there was an argument upon defendants' demurrer to the evidence.

On January 14, 1949, the matter came on for hearing upon the objection to the introduction of evidence, the motion for judgment on the pleadings, the demurrer to the evidence, and the motion for judgment notwithstanding the general verdict and the motion for a new trial. The court, having fully considered the matter, ordered and adjudged—

"that the motion for judgment on the pleadings and the objection to the introduction of any evidence dictated into the record by both of the above defendants at the trial of this matter on March 25, 1948, should be and the same hereby overruled. . . . that the demurrers to the evidence introduced on behalf of the plaintiff and dictated into the record at the trial of this matter on March 25, 1948, by the above defendants should be and the same are hereby sustained and that defendants and each of them have judgment for their costs taxed at $———. . . . that the motion of the defendants and each of them made in open court for permission to withdraw their motion for judgment notwithstanding the general verdict and the motion for a new trial filed herein should be and the same is hereby sustained and said motions are withdrawn."

This was the judgment from which the plaintiff has appealed. In support of the judgment of the trial court appellees in their brief argue:

"The demurrers to appellant's evidence were lodged by appellees 'for the reason that it does not prove a cause of action or sustain the burden of proof on the part of the plaintiff.' On this contention appellees argued and submitted to the trial court that the benefit of the doctrine of *res ipsa loquitur* was not available to appellant because (1) evidence was introduced tending to prove specific acts of negligence, (2) all the instrumentalities causing the injury were not under the exclusive control of the defendant, and (3) that reasonable inferences could be drawn from the evidence other than that defendant was negligent. Each of these points was presented in appellees' argument and trial brief. Appellees have insisted and still maintain that in addition to the other grounds their demurrer was good on the third ground. . . ."

Taking these up seriatim, (1) refers to the testimony of the witness Ruth Nutter. That evidence would not have been sufficient to establish that the driver of the bus was asleep at the time of the accident, or that he had been. All it amounted to was that some unknown passenger in the bus accused him of having been asleep previously. Perhaps the evidence was introduced only for the purpose of showing the statement of the driver of the bus to the effect that "he wasn't asleep, he was sideswiped," and his further statement to the witness: "I don't want to add anything; I have already made my remarks," and the further fact that the later examination by the witness of the south side of the bus showed no evidence of

having been sideswiped. But we are not called upon here to pass upon the correctness of the trial court's ruling upon defendants' objection to this testimony. If error at all it was a trial error, and its soundness could be reviewed only upon a motion for a new trial, which motion, as we have seen, was withdrawn by appellees.

Touching point (2), that all the instrumentalities causing the injury were not under the exclusive control of defendants, appellees contend that what caused plaintiff's injury was the collision of the bus company's bus with the bridge, and point out that the defendant bus company was not in control of the bridge. We think this contention is untenable. Appellees cite on this point *Stroud v. Sinclair Refining Co.*, 144 Kan. 74, 76, 58 P. 2d 77; *Starks Food Markets, Inc., v. El Dorado Refining Co.*, 156 Kan. 577, 134 P. 2d 1102; *Sipe v. Helgerson*, 159 Kan. 290, 153 P. 2d 934; *Truhlicka v. Beech Aircraft Corp.*, 162 Kan. 535, 178 P. 2d 252, and some other authorities. We have examined all of the authorities cited by appellees on this point and find none of them sustains their position.

Touching point (3), that reasonable inferences could be drawn from the evidence other than that defendant bus company was negligent, perhaps it is sufficient to say that the drawing of inferences was for the jury in the first place, and the fact that other inferences might have been drawn is not a ground for a demurrer to the evidence. We observe that the appellees did not afford the jury much of a chance to draw from the evidence any inference other than the negligence of defendant bus company. Defendants offered no evidence, except as to the extent of injuries. In the oral argument it was suggested that there might have been a hole in the floor of the bridge, or something else which caused the bus to collide with the side of the bridge. But there is no hint of such a thing in the evidence. Where in a case to which the doctrine of *res ipsa loquitur* is applicable, and the facts and circumstances are such that the jury could reasonably draw the inferences of negligence of defendants, the burden of going forward with the evidence to show that something else than had been shown by plaintiff caused or contributed to the injury is upon the defendant. (*Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599.) Nothing of that kind was done.

More than that, in passing upon a demurrer to the evidence the court had no authority to weigh the evidence, but was bound to consider the evidence most favorable to the plaintiff.

The result is that there is no sound legal basis which justified the court in sustaining the demurrer to plaintiff's evidence. Its judgment doing so should be reversed.

We now take up the cross-appeal of the bus company's insurer, made a party-defendant when the action was brought and joined in the motion to require plaintiff to make the petition more definite and certain, hereinbefore noted.

On August 25, 1947, James F. Malone, Jr., as insurance commissioner of the commonwealth of Pennsylvania, appearing specially for the purpose of the motion only, moved the court for an order dismissing the case as to the defendant insurer for the reason the court no longer had jurisdiction over the defendant insurer. In support of the motion the movant advised the court that he is the duly elected, qualified and acting superintendent of insurance of the commonwealth of Pennsylvania; that the Keystone Mutual Casualty Company, Inc., ceased to exist as a legal entity on the 26th day of June, 1947, by virtue of an order and decree issued by the court of common pleas of Dauphin county, Pennsylvania, in the case of *Commonwealth of Pennsylvania, ex rel. T. McKeen Chidsey, Attorney General, v. Keystone Mutual Casualty Company;* that by force and effect of the order and decree movant was directed to take possession of the property of the Keystone Mutual Casualty Company in accordance with the laws of the commonwealth of Pennsylvania then in force and effect; that the Keystone Mutual Casualty Company was dissolved, its charter vacated and its corporate existence ended, and all persons were enjoined and restrained from instituting and prosecuting any action at law against the Keystone Mutual Casualty Company. A copy of the orders and decree, duly certified, were attached to the motion as exhibits thereto. Without reciting the instruments in detail it is sufficient to say they show, in substance, that on relation of the insurance commissioner the attorney general, on June 26, 1947, filed a suggestion praying for a rule upon the Keystone Mutual Casualty Company, its agents, officers and employees, enjoining and restraining them from transacting any business for the company, or disposing of any of its property, and enjoining all persons from instituting or prosecuting any action at law or in equity against said company, and directing it to show cause why its business should not be closed and the insurance commissioner of the state should not take possession of its property and debts and the company be dissolved, its charter vacated, its cor-

porate existence ended, and its business affairs liquidated under the direction of the insurance commissioner, and for such other relief as the nature of the case and the interest of its policyholders, creditors and the public might require; that prior to the issuance of the rule the Keystone Mutual Casualty Company appeared by its attorney, waived the issuance of the rule, accepted service of the same and consented to the possession of the company by the insurance commissioner; and it further appearing that the company was insolvent and in such condition that its further transaction of business would be hazardous to its policyholders or its creditors or to the public; that on the same date a final decree was issued that the company be dissolved, its charter vacated, its corporate existence ended, and its business affairs liquidated under the direction of the insurance commissioner, and restraining the company, its officers, agents and employees from transacting any business of the company or disposing of any of its property, and restraining all persons from instituting or prosecuting any action at law or in equity against the company, and further ordering all persons having claims against the company to file them with the insurance commissioner not later than June 25, 1948.

On October 1, 1947, this motion was considered by the court and overruled. Thereafter James F. Malone, Jr., as insurance commissioner of the commonwealth of Pennsylvania and statutory liquidator of the Keystone Mutual Casualty Company, filed an answer in which he incorporated his motion upon special appearance to dismiss the action, and in which he demurred to the petition of the plaintiff for the reason that the court no longer had jurisdiction over the defendant Keystone Mutual Casualty Company, a corporation, now dissolved, and further denied each and every and all allegations, averments and statements in said petition, except as specifically admitted. The answer admitted that prior to June 26, 1947, the insurer was a corporation organized under the laws of Pennsylvania and authorized to do business in Kansas, and prior thereto had issued to the bus company a policy of insurance, which was in full force and effect on June 1, 1945, and alleged the proceedings in the Pennsylvania court, hereinbefore referred to, and further averred that if plaintiff was injured at the time and place alleged in her petition such injuries were not due to any negligence, carelessness or improper management on the part of the defendant bus company.

James F. Malone, Jr., as insurance commissioner of the commonwealth of Pennsylvania and statutory liquidator of the Keystone Mutual Casualty Company, continued to participate in the trial of the action until the close thereof, and thereafter filed his notice of cross-appeal from the order of the court of November 1, 1947, overruling his motion upon special appearance to dismiss the action of the Keystone Mutual Casualty Company and from the order made on January 14, 1949, denying his motion for judgment on the pleadings, which was dictated into the record. Counsel for the cross-appellant contends that by virtue of the full faith and credit laws of the federal constitution, art. IV, sec. 1, the judgment and order of June 26, 1947, of the court of common pleas in Dauphin county, Pennsylvania, must be given the same force and effect in Kansas as it would be given in Pennsylvania when properly presented to a Kansas court, and further argues that under that decree the corporation was dead for all purposes. Perhaps that is true as to the corporate entity, but here the insurance commissioner of the commonwealth of Pennsylvania was given authority to liquidate the business and affairs of the corporation. This was to be done as the nature of the case and the interest of its policyholders, creditors and the public might require. In performing that duty he appeared in this state and contested this action upon its merits. When the insurance company was authorized to do business in Kansas it came into the state under the provisions of our statute relating to foreign corporations. Among other sections of our statute applicable to it is G. S. 1935, 17-505, which reads:

"Any corporation organized under the laws of another state, territory, or foreign country, and authorized to do business in this state, shall be subject to the same provisions, judicial control, restrictions, and penalties, except as herein provided, as corporations organized under the laws of this state."

This section of our statute was not repealed by our general corporation code of 1939 (chap. 152, sec. 154, Laws 1939.) See, also, *Keehn v. Stapleton,* 161 Kan. 476, 479, 169 P. 2d 811.

And G. S. 1947 Supp. 17-3606, which reads:

"All corporations, whether they expire by their own limitations, or are otherwise dissolved, shall nevertheless for the term of three years from such expiration or dissolution be continued bodies corporate for the following purposes:

"A. Prosecuting and defending suits by or against them, . . ."

We think the points argued by the cross-appellant are not well sustained and that the court did not err in the rulings complained of.

There is no suggestion in the record, nor contention on the part of the appellee bus company or the cross-appellant, that the verdict of $4,750 in favor of the plaintiff in the action was excessive or should not stand if the court's ruling sustaining the demurrer to the evidence should be overruled. The result is that upon plaintiff's appeal the judgment of the trial court is reversed with directions to reinstate the verdict of $4,750 in favor of the plaintiff and render judgment thereon, and upon the cross-appeal the judgment of the trial court is affirmed.